UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
DARRICK GRIMES and YOLANDA GRIMES,                :

                                    Plaintiffs,                   :
                                                                          Civil Case No.
                        -against-                         :        08-CV-1024 (JGK)

FREMONT GENERAL CORPORATION, FREMONT       :
INVESTMENT AND LOAN, WCS LENDING, LLC,
JONATHAN TANENBAUM, AMERICA'S SERVICING :
COMPANY, U.S. BANCORP and U.S. BANK,
NATIONAL ASSOCIATION, as Trustee for MASTER    :
ASSET BACKED SECURITIES TRUST 2006-FRE-1,

                                                                          :

                                    Defendants.                  :

-------------------------------------------------------------------x

---

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT WCS LENDING LLC'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)

---

**FARRELL FRITZ, P.C.**
*Attorneys for Defendant*
*WCS Lending, LLC*
1320 RexCorp Plaza
Uniondale, New York 11556-0120
(516) 227-0700

*Of Counsel:*
  David A. Scheffel
  Jason W. Trigger

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................ 2

STATEMENT OF THE CASE ............................................................................... 3

    A.    The Parties ............................................................................................. 3

    B.    Factual Background ................................................................................ 4

    C.    Procedural History ................................................................................. 5

ARGUMENT ....................................................................................................... 6

POINT I - THE STANDARD OF REVIEW ............................................................ 6

    A    The First Cause of Action Under the Truth in Lending
        Act Should Be Dismissed As to WCS Lending ....................................... 7

        1. The TILA Claim is Time-barred ....................................................... 7

        2. Plaintiffs Cannot State A Claim Against WCS Lending
           Under TILA Because WCS Lending in Not a Creditor ..................... 8

    B.    The Home Ownership And Equity Protection Act Claim
        Should Be Dismissed As To WCS Lending ......................................... 10

        1. The HOEPA Claims Are Time-Barred .......................................... 10

        2. WCS Lending Is Not A Creditor Under HOEPA ........................... 10

    C.    The Third Cause of Action Should Be Dismissed Because It
        Fails to State A Claim Under GBL § 349 ............................................. 11

    D.    The Fourth Cause of Action Should Be Dismissed Because It
        Fails to State A Claim For Fraud .......................................................... 12

    E.    The Fifth Cause of Action Should Be Dismissed Because A
        Claim for Civil Conspiracy To Commit Fraud Is Not
        Recognized By New York Law ........................................................... 15

    F.    The Sixth Cause of Action Under The Real Estate Settlement
        Procedures Act is Time-Barred ........................................................... 16

    G.    The Seventh Cause of Action Pursuant to New York Usury Law
        Should Be Dismissed Because WCS Lending Is Not A Lender ........... 17

i

H.    The Eighth Cause of Action Under the Fair Housing Act
      Should Be Dismissed Because It Is Time-Barred ............................... 18

I.    The Ninth Cause of Action Under the Equal Credit Opportunity
      Act is Time-Barred ........................................................................ 19

J.    The Tenth Cause of Action Under the Federal Civil Rights
      Law Should Be Dismissed ................................................................ 20

K.    The Eleventh Cause of Action Should be Dismissed Because
      WCS Lending Is Not A Proper Defendant Pursuant To The
      New York Human Rights Law .......................................................... 23

CONCLUSION .............................................................................................. 24

FFDOCS1\810500.01

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
DARRICK GRIMES and YOLANDA GRIMES,          :

                              Plaintiffs,          :
                                                                     Civil Case No.
                    -against-                       :   08-CV-1024 (JGK)

FREMONT GENERAL CORPORATION, FREMONT     :
INVESTMENT AND LOAN, WCS LENDING, LLC,
JONATHAN TANENBAUM, AMERICA'S SERVICING :
COMPANY, U.S. BANCORP and U.S. BANK,
NATIONAL ASSOCIATION, as Trustee for MASTER   :
ASSET BACKED SECURITIES TRUST 2006-FRE-1,

                                                        :
                              Defendants.
                                                        :
------------------------------------- ----------------------------------x

　　　　Defendant WCS Lending, LLC ("WCS Lending") respectfully submits this

Memorandum of Law in support of its motion, pursuant to Rule 12(b)(6) of the Federal Rules of

Civil Procedure ("FRCP"), to dismiss the Complaint.[1]  Defendant WCS Lending respectfully

submits that, even accepting as true the allegations set forth by Plaintiffs Darrick Grimes and

Yolanda Grimes (together, the "Plaintiffs"), Plaintiffs have failed to establish any viable claims

upon which relief can be granted.

## Preliminary Statement

　　　　The Complaint begins with a four-page boilerplate diatribe against predatory lending in

general, citing a number of irrelevant statistics upon which Plaintiffs seek to blame the

"nationwide foreclosure epidemic," but which bear no relevance to Plaintiffs' allegations in this

case.  However, what becomes clear is that this action represents nothing more than the latest in

---

[1] A true and correct copy of the Complaint served in this action, with exhibits, is annexed to the accompanying Affidavit of David A. Scheffel, sworn to June 16, 2008, ("Scheffel Aff.") as Exhibit "A."

a string of desperate attempts on behalf of Plaintiffs to avoid mortgage obligations they entered into more than two and a half years ago.

Although Plaintiffs set forth numerous causes of actions including fraud, deceptive practices and discrimination, the allegations of the Complaint make clear that the situation is much simpler than that. Plaintiffs entered into a mortgage loan which they could not afford with full and complete knowledge of the terms thereof. Plaintiffs were represented by counsel at the closing of the loan, knew of the terms of the mortgage loan, and with that knowledge chose to enter into the loan. Now, more than two years later, when Plaintiffs are likely facing the adverse consequences of their decision, they seek to avoid their mortgage obligations, placing blame for their decision on anyone and everyone but themselves.

The Complaint suffers from a variety of deficiencies, namely that many of the claims set forth are time-barred and others lack anything but bare, naked and conclusory allegations of discrimination and wrong doing. Thus, even when viewed in the light most favorable to Plaintiffs, the Complaint fails to state a claim upon which relief can be granted.

For the reasons set forth below, this Court should dismiss the Complaint in its entirety.

## Statement of the Case

The facts, derived from the Complaint, dated January 29, 2008, and the exhibits annexed thereto, are summarized below.

### A.     The Parties

Plaintiffs are Darrick Grimes and Yolanda Grimes, homeowners residing at 23 Stacy Lee Drive, Newburgh, New York (the "Subject Property"). Compl. ¶ 15. Defendants are WCS Lending, a mortgage broker, organized under the laws of the State of Florida and licensed to do business as a mortgage broker in the State of New York, Jonathan Tanenbaum ("Tanenbaum"),

now deceased, formerly an employee of WCS Lending and Fremont Investment and Loan ("Fremont"), upon information and belief, a mortgage lender, licensed to operate in the State of New York. Id., ¶¶ 19, 25-27.

### B.     Factual Background

Only the facts central to this motion are set forth herein.

This action involves Plaintiffs' conduct in financing the purchase of the Subject Property. *See* Compl., ¶¶ 15-16. To that end, the Complaint alleges that Plaintiffs attempted to obtain a loan through Washington Mutual Bank, but were denied mortgage financing. Id., ¶ 39. Looking for an alternative, on or about September 6, 2005, Plaintiffs learned of WCS Lending and Tanenbaum through an internet search, and contacted Tanenbaum via e-mail. Id., ¶ 40-41. Based on information provided by Plaintiffs, Tanenbaum informed them that they were prequalified for mortgage financing in "at least the amount[]" of $418,000. Id., ¶ 43. The prequalification letter from Tanenbaum to Plaintiffs, dated September 12, 2005 ("Prequalification Letter"), did not contain specific loan terms and explicitly stated that it was "not a final loan approval nor [was] it a commitment to lend, and [was] subject to satisfactory verification of all the information contained in [Plaintiffs'] application." Id., Scheffel Aff, Ex. B. Further, the Prequalification Letter specified that "[t]he interest rate is floating until you receive written confirmation that it has been locked," and that Tanenbaum expected "to obtain a mortgage commitment in approximately Two (2) weeks." Id.

On or about September 13, 2005, Tanenbaum submitted Plaintiffs' mortgage application to Fremont. Compl., ¶ 44. Subsequently, Fremont approved Plaintiffs' mortgage financing in the form of an adjustable rate (2/28 ARM) first mortgage in the amount of $405,000.00 at an initial interest rate of 8.45% and a second, home equity loan, in the amount of $22,500.00 with a

fixed interest rate of 12.49% (the "Mortgage Loan"). Id., ¶¶ 67, 87. The Complaint alleges that Tanenbaum failed to inform Plaintiffs of the terms of the mortgage financing offered by Fremont until the day of the closing. Id., ¶ 77 However, Plaintiffs admit that when they were made aware of the terms offered by Fremont, Plaintiffs agreed to such terms and accepted the Mortgage Loan as offered by Fremont.

On October 12, 2005, Plaintiffs attended a closing, whereby their purchase of the Subject Property was consummated, and the Mortgage Loan between Plaintiffs and Fremont was executed (the "Closing"). Id. ¶ 88. At the Closing, Plaintiffs were informed of the terms of the Mortgage Loan. Id. Although the Mortgage Loan was somewhat different than that Plaintiffs believed they would receive, they accepted the Mortgage Loan and proceeded with the purchase of the Subject Property. Id., ¶ 77.

It is important to note that the Complaint does not allege that WCS Lending acted as a "creditor" to Plaintiffs, but only as the party that brokered the Mortgage Agreement between Plaintiffs and Fremont. It is also important to note that the Complaint does not allege that Defendants committed any acts after the Closing, on October 12, 2005.

### C.    Procedural History

Plaintiffs filed the Complaint on January 29, 2008, over two years and three months after the Closing, and the last alleged acts contained in the Complaint took place. WCS Lending now moves for dismissal of the Complaint in its entirety pursuant to FRCP 12(b)(6).

**Argument**

**POINT I**

**THE STANDARD OF REVIEW**

A court should grant a motion to dismiss under FRCP 12(b)(6) if it "is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." <u>Vasile v. Dean Witter Reynolds, Inc.</u>, 20 F. Supp. 2d 465, 476 (E.D.N.Y. 1998) (<u>citing</u> <u>H.J. Inc v. Northwestern Bell Tel. Co.</u>, 492 U.S. 229, 249-50 (1989)).  In deciding a motion to dismiss, the Court must read the facts alleged in the Complaint in the light most favorable to the plaintiff, and accept those allegations as true.  <u>Id.</u>  However, the Court need not accept as true "bald assertions" or conclusions of law.  <u>Leeds v. Meltz</u>, 85 F.3d 51, 53 (2d Cir. 1996).

In deciding a motion to dismiss, the Court may look to the documents attached as exhibits to the Complaint, because, as the Second Circuit has held:

> [t]he complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated by reference. . . .[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint, the defendant may produce the [document] when attacking the complaint for its failure to state a claim, because plaintiff should not so easily be allowed to escape the consequences of its own failure. <u>Id.</u>

<u>Cortec Indust., Inc. v. Sum Holding, L.P.</u>, 949 F.2d 42, 47 (2d Cir. 1991) (internal citations omitted). <u>See also</u> <u>International Adiotext Network, Inc. v. American Telephone & Telegraph</u>, 62 F.3d 69, 72 (2d Cir. 1995) (same).

**A.     The First Cause of Action Under The Truth In
Lending Act Should Be Dismissed As To WCS Lending**

The claims under the Truth in Lending Act, 15 U.S.C. §§ 1601 et seq, ("TILA"), as against WCS Lending fail for two independent reasons. First, the TILA claim is barred by the statute of limitations. Second, the TILA claim fails to state a claim against WCS Lending because it is not a "creditors," under this law.

### 1.     The TILA Claim Is Time-barred

A TILA claim must be brought "within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e); see also Boursiquot v. Citibank, 323 F.Supp.2d 350, 353 (D. Conn. 2004), citing Cardiello v. Money Store, Inc., 2001 U.S. Dist. LEXIS 7107, *11, 00 Civ. 7332 (SDNY June 1, 2001); Van Pier v. Long Island Savings Bank, 20 F.Supp.2d 535, 536 (SDNY 1998). As the court in Boursiquot held, "[i]t is well settled that the occurrence of the violation means the date the plaintiff enters the loan agreement, or, in the alternative, when the defendant performs by transmitting the loan funds to the plaintiffs." Boursiquot, 323 F.Supp.2d at 353 (internal citations omitted).

In this case, Plaintiffs entered into the loan agreement at the Closing on October 12, 2005. See Compl. ¶ 66; Scheffel Aff., Ex. A. Thereafter, Fremont transmitted the funds for the purchase of the Subject Property. Id. Therefore, the statute of limitations on any claim brought by Plaintiffs under TILA expired in October of 2006, well over a year prior to the filing of the present action. Id., Ex. A. Where Plaintiffs' "TILA claims were first brought long after the passing of the statute of limitations," courts of the Second Circuit have dismissed such claims as time-barred. Bousiquot, 323 F.Supp.2d at 354.

7

Accordingly, the TILA claim is time-barred.  Since the statute of limitations has expired, WCS Lending is entitled to an order granting its motion to dismiss Plaintiffs' First Cause of Action.

>    **2.    Plaintiffs Cannot State A Claim Against WCS Lending Under TILA Because WCS Lending Is Not A Creditor**

TILA applies disclosure obligations upon entities that it identifies as "creditors."  The fundamental purpose of TILA is to require creditors to disclose the true cost of consumer credit so that a consumer can make an informed choice among available methods of payment.  Joseph v. Norman's Health Club, Inc., 532 F.2d 86 (8th Cir. 1976).

It is well-settled that in order to state a claim under TILA, a plaintiff must plead facts sufficient to demonstrate that the defendant is 1) a creditor in the general sense, *i.e.*, one who extends credit in a certain minimum number of transactions; and 2) a creditor in the specific transaction in dispute, such that it is the entity to whom payments must initially be directed.  *See Diaz v. Paragon Motors of Woodside, Inc.*, 424 F.Supp.2d 519, 529 (EDNY 2006).  Even when viewed in the light most favorable to Plaintiffs, the allegations in the Complaint fail to set forth any assertions that WCS Lending is a "creditor" as defined by TILA.

In the instant case, the Complaint alleges that WCS Lending acted as a mortgage broker for Plaintiffs.  Compl. ¶¶ 25, 52.  Indeed, Plaintiffs do not allege at any point that they obtained financing for their mortgage from WCS Lending, but only that WCS Lending assisted them by acting as a broker in obtaining mortgage financing from Fremont.  *Id.* ¶¶ 52, 53.  The Complaint fails to allege either that WCS Lending regularly extended credit in connection with mortgage loans and that WCS Lending was the entity to which Plaintiffs' mortgage notes were to be initially payable.  15 U.S.C. § 1602(f); *see also Diaz*, 424 F.Supp.2d at 529.

8

Entities that are not regularly engaged in the extension of consumer credit, and are not the entities to whom the debt is to be initially payable, are routinely dismissed from Truth and Lending claims. For instance, in Robey-Harcourt v. Bencorp Fin. Co., the Tenth Circuit held that the plaintiff could not maintain an action against a mortgage broker under TILA, because a mortgage broker was not a "creditor" under the meaning of that statute. 326 F.3d 1140, 1142 (10th Cir. 2003).

Similarly, in Beard v. Worldwide Mortgage Corporation, a title company and its principle were dismissed from a TILA claim where the plaintiff homeowner alleged that she had refinanced her home in connection with a predatory lending scheme that targeted African-Americans. 354 F.Supp.2d 789, 810 (W.D. Tenn. 2005). In that case, the court held that because the plaintiff did not allege that the title company extended credit in the specific transaction, nor that they regularly did so, the plaintiff's claim was fatally deficient under 15 U.S.C. § 1602(f). Id. at 811.

WCS Lending did not extend credit to Plaintiffs in this case, nor does WCS Lending regularly extend consumer credit, and Plaintiffs in this action have not plead such. Therefore, "Plaintiffs cannot establish a cognizable claim under [TILA], because the Act only applies to creditors[.]" *Scott v. AOL Time Warner*, 109 Fed. Appx. 480, 481 (2d Cir. 2004).

Thus, because Plaintiffs have not pled, nor could they plead any facts alleging that WCS Lending is a "creditor" as defined by TILA, WCS Lending is entitled to an order granting its motion to dismiss Plaintiff's First Cause of Action.

**B.**     **The Home Ownership And Equity Protection Act Claim Should Be Dismissed As To WCS Lending**

The Home Ownership and Equity Protection Act ("HOEPA"), 15 U.S.C. § 1639 is an amendment to TILA, and as such, Plaintiffs' claims under HOEPA suffer the same infirmities as Plaintiffs' claims under TILA.

**1.     The HOEPA Claims Are Time-Barred**

HOEPA is "a statute . . . which is included within TILA. As such, the TILA one-year statute of limitations applies" to Plaintiffs' HOEPA claims, as well. *McAnaney v. Astoria Fin. Corp.*, 2007 U.S. Dist. LEXIS 67552, *42, fn. 15, No. 04 Civ. 1101 (E.D.N.Y. Sep't 12, 2007), *citing Mercado v. Playa Realty Corp.*, 2005 U.S. Dist. LEXIS 14895, *11, No. 03 Civ. 3427 (E.D.N.Y. July 7, 2005); *see also Johnson v. Scala*, 2007 U.S. Dist. LEXIS 73442, *12-13, No. 05 Civ. 5529 (S.D.N.Y. October 1, 2007).

As with Plaintiffs' TILA claim, because Plaintiffs filed this action more than one year after the Closing, on October 12, 2005, they "are therefore time-barred from asserting claims under" HOEPA, and WCS Lending is entitled to an order dismissing Plaintiffs' Second Cause of Action for failure to state claim upon which relief can be granted. *Mercado*, 2005 U.S. Dist. LEXIS at *34.

**2.     WCS Lending Is Not A Creditor Under HOEPA**

Similarly, because HOEPA is included within TILA, the statute also applies only to "creditors." 15 U.S.C. § 1639(a) (requiring that "the creditor shall provide" such disclosures as provided by the statute). For the same reasons that Plaintiffs cannot maintain a TILA claim against WCS Lending, nor can they maintain a claim under HOEPA. WCS Lending is not a creditor, nor have Plaintiffs alleged that WCS Lending is a creditor under the definition of that term provided by TILA, under which HOEPA exists. See, e.g., Morilus v. Countrywide Home

10

Loans, Inc., 2007 U.S. Dist. LEXIS 44943, *8, No. 07 Civ. 900 (ED Pa. June 20, 2007)(dismissing HOEPA claim against defendant who was not a "creditor" as defined by § 1602(f)), reconsideration denied, 2007 U.S. Dist. LEXIS 62092, 07 Civ. 900 (ED Pa. August 22, 2007).

As explained above, Plaintiffs have not set forth any factual allegations that would require tolling of the statute of limitations and admit that they became aware of the alleged violations on October 12, 2005, the date of the Closing.  Compl. ¶¶ 79-80; Scheffel Aff., Ex A.

**C.**    **The Third Cause Of Action Should Be Dismissed Because It Fails To State A Claim Under GBL § 349**

To establish a violation of New York General Business Law ("GBL") § 349, a plaintiff must show that: (1) the alleged deceptive act was "consumer oriented;" (2) the alleged act was materially misleading; and (3) plaintiff was injured as a result.  See Stutman v. Chemical Bank, 95 N.Y.2d 24, 29 (2000); see also Lava Trading, Inc. v. Hartford Fire Ins. Co., 326 F.Supp.2d 434, 438 (SDNY 2004).  To properly allege that conduct is "consumer-oriented," Plaintiffs must set forth facts sufficient to establish that WCS Lending's acts "have a broad impact on consumers at large."  Lava Trading, Inc., 326 F.Supp.2d at 438.  New York courts have routinely dismissed claims under § 349 involving "single shot, private contract disputes, unique to the parties."  Teller v. Bill Hayes, Ltd., 213 A.D.2d 141, 145 (NY App. Div. 1995).

Despite the lengthy (and irrelevant) paragraphs Plaintiffs devote to the state of the broader housing market, the Complaint distinctly lacks any allegations that the actions taken specifically by WCS Lending in this matter are "consumer oriented" as required by the case law.  See, e.g., Lava Trading Inc., 326 F.Supp.2d at 438 (requiring that plaintiffs "allege with some specificity" the conduct of defendants that has a "broad impact on consumers at large").  Rather, Plaintiffs' claims are much more akin to those claims of the plaintiff in Teller, where that court

11

held "do not fall within the ambit of" § 349." Id. Plaintiffs' allegations against WCS Lending are unique to the circumstances of their claims -- any assertions that allege a broader consumer impact are conclusory in nature. Compl. ¶ 138, Scheffel Aff., Ex. A.

Therefore, Plaintiffs' Third Cause of Action should be dismissed as to WCS Lending.

### D.    The Fourth Cause of Action Should Be Dismissed Because It Fails To State A Claim For Fraud

In order to state a claim for fraud, a plaintiff must establish five elements: (1) a material misrepresentation or omission of facts; (2) made with knowledge of its falsity; (3) with intent to defraud; (4) reasonable reliance on the part of the plaintiff; and (5) damages. Vasile v. Dean Witter Reynolds, 20 F.Supp.2d 465, 482 (E.D.N.Y. 1998), citing Schlaifer Nance & Co. v. Estate of Andy Warhol, 119 F.3d 91, 98 (2d Cir. 1997). As stated by the New York state courts, a plaintiff must allege "a representation of fact, which is either untrue and known to be untrue or recklessly made, and which is offered to deceive the other party and to induce them to act upon it, causing injury." McMorrow v. Dime Savings Bank of Williamsburgh, 48 A.D.3d 646, 647 (N.Y. App. Div. 2008). "Moreover, the plaintiff must show not only that he or she actually relied on the misrepresentation, but also that such reliance was reasonable." Id. Thus, even when viewed in the light most favorable to Plaintiffs, the allegations of the Complaint fail to state a claim for fraud under New York law, as Plaintiffs cannot demonstrate that their reliance on any alleged misrepresentations of WCS Lending was reasonable.

Additionally, Rule 9(b) of the Federal Rules of Civil Procedure requires that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." See Fed. R. Civ. P. 9(b). The Second Circuit has stated that Rule 9(b) requires a complaint to "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the

statements were fraudulent." Rombach v. Chang, 355 F.3d 164, 170 (2d Cir. 2004). The purpose of this requirement is to "give defendants adequate notice to allow them to defend against the charge . . . and to prohibit plaintiffs from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis." In re Stac Elecs. Sec. Litigation, 89 F.3d 1399, 1405 (9th Cir. 1996).

No such allegations exist in Plaintiffs' Complaint. Rather, the fraud allegations consist merely of vague, conclusory statements which fail to meet the heightened pleading requirements set forth by Rule 9(b). See, generally, Compl.; Scheffel Aff., Ex. A.

Moreover, the crux of Plaintiffs' fraud claim against WCS Lending is that "WCS Lending and Jonathan Tanenbaum misrepresented the true terms and conditions of the mortgage loans and omitted from their representations the material facts that the terms of the loans were approved on different terms and interest rates." Compl. ¶ 170, Scheffel Aff., Ex. A. However, the Complaint makes clear that Plaintiffs were aware, or became aware of the actual details of the loan at the Closing, on October 12, 2005, and thus cannot be said to have reasonably relied on the Defendants' alleged misrepresentations in entering into the mortgage agreement. Compl. ¶ 79.

"The practice of modifying the proposed terms of a contract as the negotiations proceed is not at all analogous to 'bait and switch' selling." Goldberg v. Manhattan Ford Lincold-Mercury, Inc., 129 Misc.2d 123, 127 (NY. Sup. Ct. 1985). As demonstrated by the exhibits annexed to Plaintiffs' Complaint, Plaintiffs had been informed by Tanenbaum in a prequalification letter (the "Prequalification Letter") as early as September 12, 2005 -- one month before the Closing -- that the estimate they received from WCS Lending was "not a final loan approval nor . . . a commitment to lend, and [was] subject to . . . verification[.]" See Compl.

13

¶ 43; Scheffel Aff., Ex. B.  Further, the Prequalification Letter to Plaintiffs explicitly stated that "[t]he interest rate is floating until you receive written confirmation that it has been locked."  Id. See also Goldberg, 129 Misc.2d at 127 (noting that the contract explicitly stated "there could be no firm or fixed deal until the proposed terms in the contract received approval of the sales manager" and until such time, "the proposed contract remained an inchoate deal with no legal force or effect.")  Based on those statements in the Prequalification Letter, Plaintiffs knew or should have known that the terms of the mortgage loan were not set, and could be altered until such terms were finalized.  Therefore, reliance on such terms cannot be deemed reasonable, as required to state a claim for fraud pursuant to New York law.  See Ozelkan v. Tyree Bros. Environmental Services, Inc., 29 A.D.3d 877, 879 (NY App. Div. 20006)(dismissing a fraud claim where a plaintiff failed to properly allege justifiable reliance on alleged misrepresentations).

The actual rates and terms offered to Plaintiffs by Fremont were clearly documented and accepted by Plaintiffs, who were represented by their attorney at the Closing.  Compl. ¶ 79-80, Scheffel Aff., Ex. A. Although Plaintiffs allege that they were "shocked at the closing to find out what the real numbers were," they made the decision to proceed with the Closing and enter into the mortgage agreement with Fremont.  Id.  ¶ 77.  As in Goldberg, Plaintiffs "were free to accept or reject what was being offered . . . ."  Goldberg, 129 Misc.2d at 127.  As another New York court stated, Plaintiffs' reliance on alleged omissions and misrepresentations "was unreasonable in light of the clear, documented written provision in the mortgage agreement" that Plaintiffs were presented and agreed to at the Closing.  McMorrow, 48 A.D.3d at 648; see also Old Clinton Corp. v. 502 Old Country Road, LLC, 5 A.D.3d 363, 365 (NY App. Div. 2004)(dismissing fraud claim where "alleged oral misrepresentation conflict[ed] in a meaningful manner with a

14

particular provision in a written agreement"). The terms of the mortgage agreement were readily ascertainable from the documentation provided at the Closing, especially in light of the fact that Plaintiffs were represented by counsel. Compl. ¶ 77; Scheffel Aff., Exs. C, D & E.

Therefore, because Plaintiffs were aware of the actual terms of the mortgage loan at the Closing, Plaintiffs cannot argue that they "reasonably relied" on any alleged misrepresentations made by WCS Lending. As such, WCS Lending is entitled to an order granting its motion to dismiss Plaintiffs' Fourth Cause of Action. Further, because Plaintiffs failed to plead their fraud claim with the specificity required by Rule 9(b) of the Federal Rules of Civil Procedure, this Court should dismiss Plaintiffs' Fourth Cause of Action.

### E. The Fifth Cause Of Action Should Be Dismissed Because A Claim For Civil Conspiracy To Commit Fraud Is Not Recognized By New York Law.

New York law does not recognize a tort action for civil conspiracy. See Vasile v. Dean Witter, 20 F.Supp.2d 465, 481 (EDNY 1998), citing Wall St. Transcript Corp. v. Ziff Communications Co., 225 A.D.2d 322 (NY App. Div. 1996); see also MBF Clearing Corp. v. Shine, 212 A.D.2d 478, 479 (NY App. Div. 1995)(dismissing a claim for conspiracy to commit fraud because "conspiracy to commit fraud is never of itself a cause of action"). This principle is well settled, as New York courts have refused to consider claims for conspiracy to commit fraud for over a century. See Brackett v. Griswold, 112 N.Y. 454, 467 (1889).

The Second Circuit and district courts therein have regularly dismissed claims of civil conspiracy to commit fraud under New York law. See Crigger v. Fahnestock & Co., 443 F.3d 230, 237 (2d Cir. 2006), Durante Bros. & Sons, Inc. v. Flushing Nat'l Bank, 755 F.2d 239, 251 (2d Cir. 1984)(dismissing a claim because "New York law does not recognize a substantive tort of conspiracy"), disapproved on other grounds by Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479

15

(1985), <u>Food Holdings, Ltd. v. Bank of America Corp.</u>, 477 F.Supp.2d 602, 613 (SDNY 2007)(same), <u>Vasile</u>, 20 F.Supp.2d at 481 (same), <u>Greystone Partnership Groups, Inc. v. KLM Royal Dutch Airlines</u>, 815 F.Supp. 745, 759 (SDNY 1993)(same).

     As the courts have consistently held, "a claim for civil conspiracy requires an independent actionable tort." <u>Food Holdings</u>, 477 F.Supp.2d at 613. Thus, because "New York does not recognize conspiracy as an independent cause of action in tort," a plaintiff can only assert a claim "to the extent that the underlying conduct alleged states a cause of action." <u>Vasile</u>, 20 F.Supp.2d at 481, <u>citing</u> <u>Local 144, Hotel, Hosp. v. C.N.H. Mgt. Assocs.</u>, 741 F.Supp. 415, 421 (SDNY 1990). As demonstrated, <u>supra</u>, Plaintiffs have failed to and cannot state a claim for fraud. Therefore, Plaintiffs claim for civil conspiracy to commit fraud is equally deficient. <u>See</u> <u>Crigger</u>, 443 F.3d at 237. In <u>Crigger</u>, the Second Circuit stated succinctly that "[u]nder New York law civil conspiracy to commit fraud, standing alone, is not actionable . . . if the underlying independent tort has not been adequately pleaded." <u>Id.</u>, <u>citing</u> <u>Vasile</u>, 20 F.Supp.2d at 482; <u>see also</u> 20 N.Y. Jur.2d, Conspiracy – Civil Aspects § 1 (2005).

     Therefore, because New York law does not recognize an independent cause of action for civil conspiracy to commit fraud, WCS Lending is entitled to an order granting its motion to dismiss the Fifth Cause of Action.

**F.    The Sixth Cause of Action Under The Real Estate Settlement Procedures Act Is Time-Barred.**

     The Sixth Cause of Action as against WCS Lending, for violations of the Real Estate Settlement Procedures Act ("RESPA"), states explicitly that such cause of action lies under 12 U.S.C. § 2607. Compl. ¶ 187. The statute of limitations for claims under RESPA, as set forth in 12 U.S.C. § 2614 states:

> Any action pursuant to the provisions of section 6, 8, or 9 [§§ 2605, 2607, or 2608] may be brought in the United States district court or in any other court of competent jurisdiction, for the district in which the property involved is located, or where the violation is alleged to have occurred, within 3 years in the case of a violation of section 6 [§ 2605] and 1 year in the case of a violation of section 8 or 9 [§§ 2607 or 2608] from the date of the occurrence of the violation[.]

12 U.S.C. § 2614.

The law in this area is clear -- claims under §2607 of RESPA must be brought within "one year . . . from the date of the occurrence of the violation[.]" Snow v. First American Title Ins. Co., 332 F.3d 356, 358 (5th Cir. 2003), Johnson v. Scala, 2007 U.S Dist. LEXIS 73442, *14, No. 07 Civ. 5529 (SDNY October 1, 2007).

In Snow, the Fifth Circuit held that "[t]he statute of limitations for private plaintiffs suing for an alleged violation of § 2607 is one year." Snow, 332 F.3d at 358. The court in that case goes on to state that "[t]he phrase 'the date of the occurrence of the violation' refers to the closing[.]" Id.; see also Johnson, 2007 U.S. Dist. LEXIS 73442 at *14 (dismissing a plaintiff's claim under RESPA where the action was brought over a year after the closing).

Therefore, because the statute of limitations has expired on the RESPA claim, WCS Lending is entitled to an order granting its motion to dismiss Plaintiffs' Sixth Cause of Action.

### G.    The Seventh Cause of Action Pursuant To New York Usury Law Should Be Dismissed Because WCS Lending Is Not A Lender

A mortgage broker is not a proper defendant in an action to set aside a mortgage loan under New York General Obligations Law ("Gen. Ob. Law) § 5-501. See NY Gen. Ob. Law §§ 5-501 & 5-511; Huggins v. Greenblatt, 222 A.D.2d 404, 405 (N.Y. App. Div. 1995). In Huggins, a New York appellate court dismissed an action against a broker because  a mortgage

17

broker is not a proper party in a plaintiff's action to set aside a mortgage for violations of New York's usury laws. <u>Huggins</u>, 222 A.D.2d at 405.

Indeed, in this case, WCS Lending did not act as a lender for Plaintiffs. The Complaint makes clear that WCS does not have, and has never had any security interest in Plaintiffs' home, nor does WCS Lending continue to receive payments under the mortgage loan. *See* Compl. (*passim*), Scheffel Aff., Ex. A. Therefore, WCS Lending is not the proper party in an action seeking to declare the mortgage transaction to be void, and terminating the security interest in the Subject Property. *See id.* ¶ 192.

As such, WCS Lending is entitled to an order granting its motion to dismiss the Seventh Cause of Action, as a broker is not a proper party in an action to rescind a mortgage pursuant to Gen. Ob. Law § 5-501.

**H.     The Eighth Cause of Action Under The Fair Housing Act**
**<u>Should Be Dismissed Because It Is Time-Barred.</u>**

The Fair Housing Act, 42 U.S.C. §§ 3601, et seq ("FHA") provides that "[a]n aggrieved person may commence a civil action in an appropriate United States district court or State court not later than 2 years after the occurrence or the termination of an alleged discriminatory housing practice[.]" 42 U.S.C. 3613(a)(1)(A). As this action was brought more than two years after the alleged discriminatory actions took place, the FHA claim is time-barred.

Where a plaintiff fails to bring a claim for an alleged violation of FHA within the two-year statute of limitations, such a claim is properly dismissed as time-barred. <u>See Moseke v. Miller & Smith, Inc.</u>, 202 F.Supp.2d 492, 509 (ED Va. 2002)(holding "that an act of discrimination must occur within the limitations period and a plaintiff's complaint must be filed within two years of that discriminatory act in order to sustain a . . . cause of action under the FHA"). In <u>Moseke</u>, the court looked "to Plaintiff's Complaint and finds that Plaintiffs have

failed to plead that Defendants committed an act within two years of when the Complaint was filed." Id. at 510.

In the instant case, it is clear from the allegations of Plaintiffs' Complaint that the acts complained of occurred no later than October 12, 2005, the date of the Closing. Compl. ¶¶79-80; Scheffel Aff., Exs. A - E. The law is well settled that where Plaintiff has not and cannot plead facts that allege violations that occur within the limitations period, and no tolling provision is indicated, WCS Lending is entitled to dismissal, as Plaintiffs' claim is time-barred. Radivojevic v. Granville Terrace Mut. Ownership Trust, 20 Fed. Appx. 542, 543-544 (7th Cir. 2001). The Radivojevic court noted that the FHA "provides for tolling of the limitations period only where administrative proceedings are pending before the Department of Housing and Urban Development or a 'certified agency.'" Id. Plaintiffs have not alleged that any administrative proceedings have tolled the limitations period for their FHA claim. Compl., generally; Scheffel Aff., Ex. A.

Therefore, WCS Lending is entitled to an order granting its motion to dismiss Plaintiffs' Eighth Cause of Action as time-barred.

## I.    The Ninth Cause of Action Under The Equal Credit Opportunity Act Is Time-Barred

A claim pursuant to the Equal Credit Opportunity Act, 15 U.S.C. §§ 1691, et. seq. ("ECOA"), must be brought within two years of the date of the alleged violation. 15 U.S.C. 1691e. As Plaintiffs' action was filed in excess of two years after the Closing, the claim for relief under ECOA is time-barred.

"A two-year statute of limitations governs ECOA claims." Coveal v. Consumer Home Mortgage, Inc., 2005 U.S. Dist. LEXIS 5003, *11-12, No. 04 Civ. 4755 (EDNY March 29, 2005). As the statute states, "any action under this section may be brought in the appropriate

United States district court without regard to the amount in controversy, or in any other court of competent jurisdiction. No such action shall be brought later than two years from the date of the occurrence of the violation[.]" 15 U.S.C. § 1691e(f); see also Claybooks v. Primus Auto Fin. Servs., 363 F.Supp.2d 969, 975 (MD Tenn. 2005).

ECOA "is not silent on when the statute of limitations begins to run, stating that it should run from 'the date of the occurrence of the violation.'" Claybooks, 363 F.Supp.2d at 975, citing 15 U.S.C. 1691e(f). As the Sixth Circuit has explicitly stated, "the limitations period begins at the time the discriminatory conduct occurs, not at the time that the consequences of the action becomes painful." Id., citing Mays v. Buckeye Rural Elec. Coop., Inc., 277 F.3d 873, 879 (6th Cir. 2002); see also Ramsdell v. Bowles, 64 F.3d 5, 9 (1st Cir. 1995)(dismissing ECOA claim brought more than two years after closing of loan transactions), Riggs Nat'l Bank v. Webster, 832 F.Supp. 147, 151 (D. Md. 1993)(same).

As demonstrated above, Plaintiffs became aware of the alleged violation on the date of the Closing, October 12, 2005. Compl. ¶¶ 79-80; Scheffel Aff., Ex. A. As such, the limitations period began to run on that date. Claybooks, 363 F.Supp.2d at 975. Plaintiffs' action was not filed until well over two years later, on January 31, 2008, and is thus time-barred.

Therefore, WCS Lending is entitled to an order granting its motion to dismiss the Ninth Cause of Action.

### J.    The Tenth Cause of Action Under the Federal Civil Rights Law Should Be Dismissed

"To state a claim under § 1981, the following must be alleged: '(1) the plaintiff is a member of racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerned one or more of the activities enumerated in the statute (i.e., make and enforce contracts, sue and be sued, give evidence, etc.).'" Mian v. Donaldson, Lufkin

& Jenrette Sec. Corp., 7 F.3d 1085, 10877-88 (2d Cir. 19938); see also Wiltshire v. Dhanraj, 421

F.Supp.2d 544, 555 (EDNY 2005), Dove v. Fordham University, 56 F.Supp.2d 330, 338 (SDNY

1999). Similarly, "to maintain an action under §1982, a plaintiff must allege that she was

intentionally deprived of a property right because of her race." Wiltshire, 421 F.Supp.2d at 555

(internal citations omitted). "Conclusory or naked allegations will not suffice." Dove, 56

F.Supp.2d at 338, citing Mian, 7 F.3d at 1087.

The four elements of a § 1985(3) claim are: (1) a conspiracy; (2) for the purpose of

depriving, either directly or indirectly, any person or class of persons of equal protection of the

laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the

conspiracy; (4) whereby a person is either injured in his person or property or deprived of any

right of a citizen of the United States. See Mian, 7 F.3d at 1087, citing United Brotherhood of

Carpenters, Local 610 v. Scott, 463 U.S. 825, 828-829 (1983). "Furthermore, the conspiracy

must also be motivated by some racial . . . invidious discriminatory animus behind the

conspirator's action." Mian, 7 F.3α at 1087.

In this case, Plaintiffs' allegations of discrimination constitute nothing more than

conclusory allegations that Plaintiffs, who are African-American, received "higher interest rates

than those charges [sic] to similarly situated Caucasian mortgagees." Compl. ¶ 213. Nowhere in

their Complaint do Plaintiffs allege that they were targeted for an allegedly higher cost loan

*because* of their race. See, e.g., Dove, 56 F.Supp.2d at 338 (holding that "in order to survive a

motion to dismiss, the events of the intentional and purposeful discrimination, as well as the

racial animus constituting the motivating factor for the defendant's actions must be specifically

pleaded in the complaint"), citing Yusuf v. Vassar College, 827 F.Supp. 952, 955 (SDNY 1993);

see also Wiltshire, 421 F.Supp.2d at 555-57 (dismissing §§ 1981, 1982 and 1985(3) claims

21

where plaintiff failed to plead with specificity that she was targeted for discriminatory acts because of her race). Here, the Complaint "fails to offer more than conclusory allegations that [they were] discriminated against because of [their] race." Mian, 7 F.3d at 1087. Despite the voluminous "Preliminary Statement" contained in the Complaint which purports to detail instances of discrimination in the housing industry, Plaintiffs do not assert any allegations that would tend to show WCS Lending "targeted" Plaintiffs based upon their race. Courts have generally only upheld claims under Federal civil rights law where much more specific facts are pled to demonstrated an inference of discriminatory intent. For instance, a court held that where plaintiffs "alleged specific conduct which, if proven at trial, could support an inference of intentional discrimination." Barkley v. Olympia Mortgage Co., 2007 U.S. Dist. LEXIS 61940, *35-36, No. 04 Civ. 875 (EDNY August 22, 2007).

> For example, plaintiffs allege that [one defendant] used advertising featuring minority consumers. They also allege that the company placed ads in the *Carribean Life* community newspaper that serves the West Indian immigrant community, while not advertising in community papers that are part of the same newspaper chain but serve primarily white neighborhoods.

Id.

Further, the plaintiffs in that case alleged that one defendant used "race-conscious outreach strategies," where an African-American salesperson told the plaintiffs "he takes care of his own." Id. The court held in that case that "[t]aken together, these allegations permit the inference that defendants sought to lure minority homebuyers into the fraudulent transactions." Id.

In the instant case, there is no indication whatsoever that WCS Lending took part in any such scheme or committed any such acts. There are only Plaintiffs' conclusory allegations. These allegations fall far short of the specified pleading requirements set forth by the courts of

the Second Circuit.  See, e.g. Dove, 56 F.Supp.2d at 338.  Other than the conclusory allegations

that Plaintiffs were discriminated against based on their race, they fail to allege that WCS

Lending had any "racial animus" when acting as their mortgage broker.

Therefore, because Plaintiffs fail to offer anything beyond conclusory allegations of

racial discrimination, and do not allege that WCS Lending specifically targeted them for higher

cost loans because of their race, the claims pursuant to §§ 1981, 1982 and 1985(3) should be

dismissed.

### K. The Eleventh Cause of Action Should Be Dismissed Because WCS Lending Is Not A Proper Defendant Pursuant To The New York Human Rights Law

New York State Human Rights Law, Executive Law § 296(5) ("Human Rights Law")

states, in pertinent part:

> [i]t shall be an unlawful discriminatory practice for the **owner, lessee, sub-lessee, assignee, or managing agent of, or other person having the right to sell, rent or lease a housing accommodation, constructed or to be constructed, or any agent or employee thereof** . . . [t]o discriminate against any person because of race, creed, color, national origin, sexual orientation, military status, sex, age, disability, marital status, or familial status in the terms, conditions or privileges of the sale, rental or lease of any such housing accommodation or in the furnishing of facilities or services in connection therewith.

NY Exec. § 296(5)(a)(emphasis added).

The NYHRL also makes it unlawful:

> for **any real estate broker, real estate salesperson or employee or agent thereof** . . [t]o refuse to sell, rent or lease any housing accommodation, land or commercial space to any person or group of persons or to refuse to negotiate for the sale, rental or lease, of any housing accommodation, land or commercial space to any person or group of persons because of the race, creed, color, national origin, sexual orientation, military status, sex, age, disability, marital status, or familial status of such person or persons.

NY Exec. § 296(5)(b)(emphasis added).

In the instant case, Plaintiffs' allegations clearly demonstrate that WCS Lending was acting neither as an "owner, lessee, sub-lessee, assignee, or managing agent of, or other person having the right to sell, rent or lease a housing accommodation, constructed or to be constructed, or any agent or employee thereof," nor as a "real estate broker, real estate salesperson or employee or agent thereof." Rather, WCS Lending acted as a "mortgage broker" on behalf of Plaintiffs. Compl. ¶ 25, Scheffel Aff., Ex A. The language of the statute makes clear that mortgage brokers are not properly the subject of a claim pursuant to New York's Human Rights Law. Thus, the New York's Human Rights Law does not provide relief as against WCS Lending.

Therefore, because WCS Lending is not subject to § 296(5) of the New York Human Rights Law, it is entitled to dismissal of the Eleventh Cause of Action.

## Conclusion

For the reasons set forth above, Defendant WCS Lending, LLC respectfully requests that the Court dismiss the Complaint against it for failure to state a claim upon which relief can be granted under FRCP 12(b)(6).

Dated: June 16, 2008

Respectfully submitted,

FARRELL FRITZ, P.C.

By: _____/s/_____
David A. Scheffel
Jason W. Trigger
*Attorneys for Defendant*
*WCS Lending, LLC*
1320 RexCorp Plaza
Uniondale, New York 11556
(516) 227-0700

```
SOURCE:   CM-TSE/337485                          Farrel Fritz, P.C.                              RUN: 06/16/08
REGISTER: CM627 .1                              TIMESLIP ENTRY REGISTER                          TIME: 16:32:44
USER:     KJANT                                                                                 PAGE:    1

                                                                                    ------ DATE ------
CLIENT/GROUP   MATTER/CATEGORY      NAME              TIMEKEEPER    NAME        WORKED      EFFECTIVE    TRANSACTION
01572          0106          EAST ROCKAWAY, INC.      0364   K JANTZER         06/16/2008  06/16/2008        1
                             LOCAL LAWS

               0001                                                                HOURS          VALUE
LOCATION:                                        BILLABLE TIME:       Yes       RECORDED:   2.20      220.00
ACTIVITY:                                        HOLD FROM BILLING:   No        BILLING:    2.20      220.00
SPECIALTY:                                       SHOW ON STATEMENT:   Yes       STANDARD:             275.00
DEFAULT RATE:  100.00  015720101

DESCRIPTION:   CORRESPONDENCE WITH ASG AND JMK RE. LOCAL LAW #4 OF 2008; PREPARE LOCAL LAW #4 OF 2008 IN FINAL
               FORM; PREPARE NEG DEC IN FINAL FORM; PREPARE EAF; TELEPHONE CALLS WITH DORIS P. AND ASG RE. SAME;
               FORWARD ALL TO DORIS P.


SESSION TOTALS ----------------

                                        CLIENT/MATTER        NONBILLABLE          TOTAL
               NUMBER OF TIMESLIPS:            1                  0                  1
               RECORDED HOURS:               2.20               0.00               2.20
               BILLING HOURS:                2.20                                  2.20
               RECORDED VALUE:             220.00               0.00             220.00
               BILLING VALUE:              220.00                                220.00
               STANDARD VALUE:             275.00               0.00             275.00
```