**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

DARRICK AND YOLANDA GRIMES,

              Plaintiffs,

vs.

FREMONT GENERAL CORPORATION,
FREMONT INVESTMENT AND LOAN,
JONATHAN TANENBAUM, AMERICA'S
SERVICING COMPANY, U.S. BANCORP, AND
U.S. BANK, NATIONAL ASSOCIATION, AS
TRUSTEE FOR MASTER ASSET BACKED
SECURITIES TRUST 2006-FRE-1,

              Defendants.

Civil Action No. 08-cv-01024 (JGK)

---

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**
**PURSUANT TO RULE 12(B)(6) FOR FAILURE TO STATE A CLAIM**
**AGAINST AMERICA'S SERVICING COMPANY, U.S. BANCORP, AND**
**U.S. BANK, NATIONAL ASSOCIATION, AS TRUSTEE FOR MASTER**
**ASSET BACKED SECURITIES TRUST 2006-FRE-1**

---

**LOWENSTEIN SANDLER PC**
1251 Avenue of the Americas
New York, New York 10020
T: 212.262.6700
F: 212.262.7402
*Attorneys for Defendants America's*
*Servicing Company, U.S. Bancorp, and U.S.*
*Bank, N.A. as Trustee for Master Asset*
*Backed Securities Trust 2006-FRE-1*

On the Brief:

    Steven M. Hecht, Esq.

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................... iii

PRELIMINARY STATEMENT ................................................................................ 1

FACTS ...................................................................................................................... 4

LEGAL STANDARD ................................................................................................ 7

ARGUMENT ............................................................................................................ 8

I.    PLAINTIFFS' COMPLAINT SHOULD BE DISMISSED PURSUANT TO RULE 12(B)(6) FOR FAILURE TO STATE A CLAIM ........................................................... 8

    A.    Plaintiffs' First And Second Causes Of Action Under The Truth In Lending Act ("TILA"), As Amended By The Home Ownership Equity Protection Act ("HOEPA"), Should Be Dismissed Because They Are Not Cognizable Against Assignees Or Servicers Of Mortgage Loans. ........................................... 8

        1.    Plaintiffs Are Not Entitled To Rescind Their Residential Mortgage Transaction. ....................................................................................... 8

        2.    Neither ASC Nor US Bank/Trustee Is Liable To Plaintiffs For Damages Pursuant To TILA........................................................................... 10

        3.    Plaintiffs' Second Cause Of Action Pursuant To HOEPA Fails Because Their First Mortgage Is Not Subject To HOEPA. ........................................... 11

    B.    Plaintiffs' Third Cause Of Action For Violations Of New York State General Business Law § 349 (The "Deceptive Practices Act") Fails Because Plaintiffs Have Failed To Plead More Than Conclusory Allegations Against The Moving Defendants........................................................................... 12

    C.    Plaintiffs' Fourth Cause Of Action, Fraud, Fails For Lack Of Particularity Under Rule 9(b)............................................................................... 13

    D.    Plaintiffs' Fifth Cause Of Action For Civil Conspiracy To Commit Fraud Is Not A Valid Cause Of Action Under New York Law. ........................................... 15

    E.    Plaintiffs' Sixth Cause Of Action For Violations Of The Real Estate Settlement Procedures Act By Payment Of An Alleged "Kickback" Does Not State A Claim. ............................................................................. 15

    F.    Plaintiffs' Seventh Cause Of Action Pursuant To New York State's Usury

Statute Does Not State A Cause Of Action Against The Moving Defendants Because It Relates To A Loan That Was Not Serviced By Or Assigned To Any Of Them. .................................................................................................. 16

G.    Plaintiffs' Eight And Eleventh Causes Of Action For "Reverse Redlining" Fail For Lack Of The Required Elements. ............................................................ 17

H.    Plaintiffs' Ninth Cause Of Action For Violation Of The Equal Credit Opportunity Act Fails For Lack Of The Required Elements. ............................... 19

I.    Plaintiffs' Tenth Cause Of Action For Violations Of §§ 1981, 1982, And 1985 Of The Civil Rights Act Fails Because Plaintiffs Have Failed To Establish A *Prima Facie* Case. ............................................................................ 20

II.  PLAINTIFFS' CLAIMS UNDER TILA, HOEPA, RESPA, FAIR HOUSING ACT AND ECOA ARE TIME BARRED.............................................................................. 22

III. US BANCORP AND ASC SHOULD BE DISMISSED BECAUSE THEY HAVE NO CONNECTION TO THE CLAIMS IN THIS LITIGATION ................................... 24

CONCLUSION.............................................................................................................................25

# TABLE OF AUTHORITIES

CASES                                                                                                    PAGES

*Acito v. IMCERA Group, Inc.*,
    47 F.3d 47 (2d Cir. 1995) ....................................................................................14

*Allah v. New Century Mortgage Corp.*,
    No. 06-cv-3031, 2006 U.S. Dist. LEXIS 80666 (E.D.N.Y. Nov. 4, 2006) ...................7, 9, 15

*Artco, Inc. v. Kiddie, Inc*,
    No. 88-cv-5734, 1989 U.S. Dist. LEXIS 13548 (S.D.N.Y. Nov. 15, 1989)...............4, 5, 7, 25

*Aurora Loan Servs. v. Grant*,
    851 N.Y.S.2d 56 (Sup. Ct. 2007)............................................................................15

*Barkley v. Olympia Mortgage Co.*,
    No. 04-cv-875, 2007 U.S. Dist. LEXIS 61940 (E.D.N.Y. Aug. 22, 2007) .................... *passim*

*Bell Atlantic v. Twombley*,
    127 S. Ct. 1955 (2007)..........................................................................................7

*Blaize-Sampeur v. McDowell*,
    No. 05-cv-4275, 2006 U.S. Dist. LEXIS 75764 (E.D.N.Y. Oct. 18, 2006)............................14

*Cardiello v. The Money Store*,
    No. 00-civ-7332, 2001 U.S. Dist. LEXIS 7107 (S.D.N.Y. Jun. 1, 2001)...............................24

*Carruthers v. Flaum*,
    388 F. Supp. 2d 360 (S.D.N.Y. 2005)........................................................................6

*Hargraves v. Capital City Mortgage Corp.*,
    140 F. Supp. 2d 7 (D.D.C. 2000).............................................................................17

*Jebran v. LaSalle Bus. Credit, LLC*,
    824 N.Y.S.2d 224 (App. Div. 2006).........................................................................15

*Johnson v. Scala*,
    No. 05-cv-5529, 2007 U.S. Dist. LEXIS 73442 (S.D.N.Y. Oct. 1, 2007)........................11, 23

*Johnson v. Washington Mut. Bank, F.A.*,
    216 F. Appx. 64 (2d Cir. 2007)...............................................................................21

*Johnson v. Washington Mut. Bank, F.A.*,
    No. 03-cv-4704, 2006 U.S. Dist. LEXIS 26729 (E.D.N.Y. May 4, 2006)..................11, 19, 20

*Lava Trading, Inc. v. Hartford Fire. Ins. Co.*,

326 F. Supp. 2d 434 (S.D.N.Y. 2004) ..................................................................................12

*Lerner v. Fleet Bank, N.A.*,
459 F.3d 273 (2d Cir. 2006) ...............................................................................................14

*Matthews v. New Century Mortgage Corp.*,
185 F. Supp. 2d 874 (S.D. Ohio 2002) ...............................................................................18

*Mayfield v. Gen. Elec. Capital Corp.*,
No. 97-cv-2786, 1999 U.S. Dist. LEXIS 4048 (S.D.N.Y. Mar. 31, 1999) ...........................10

*Mercado v. Playa Realty Corp.*,
No. 03-cv-3427, 2005 U.S. Dist. LEXIS 14895 (E.D.N.Y. Jul. 7, 2005) .........................14, 23

*Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Amoco, P.L.C.*,
319 F. Supp. 2d 352 (S.D.N.Y. 2004) .................................................................................24

*Nembhard v. Citibank, N.A.*,
No. 960-cv-3330, 1996 U.S. Dist. LEXIS 20062 (E.D.N.Y. Oct. 25, 1996) ..........................9

*Northwestern Mut. Life Ins. Co. v. Wender*,
940 F. Supp. 62 (S.D.N.Y. 1996) .......................................................................................13

*Smith v. RBC Mortgage*,
No. 04-cv-9282, 2006 U.S. Dist. LEXIS 10282 (S.D.N.Y. Mar. 6, 2006) ......................23, 24

*Stuart Silver Assoc. v. Baco Dev. Corp.*,
665 N.Y.S.2d 415 (App. Div. 1997) ...................................................................................13

*Synder v. Puente de Brooklyn Realty Corp.*,
746 N.Y.S.2d 517 (App. Div. 2002) ...................................................................................15

*USAlliance Fed. Credit Union v. CUMIS Ins. Soc'y, Inc.*,
346 F. Supp. 2d 468 (S.D.N.Y. 2004) .............................................................................12, 13

## STATUTES

12 U.S.C. § 2607 .............................................................................................................15, 24

15 U.S.C. § 1602 .......................................................................................................11, 12, 23

15 U.S.C. § 1635 ...................................................................................................8, 9, 10, 21

15 U.S.C. § 1639 ...........................................................................................................12, 23

15 U.S.C. § 1640 ....................................................................................................................23

15 U.S.C. § 1641 .................................................................................................10, 11, 12

15 U.S.C. § 1691 ...........................................................................................................19

15 U.S.C. § 1691e .........................................................................................................24

42 U.S.C. § 1982 ...........................................................................................................21

42 U.S.C. § 1985(3) ................................................................................................21, 22

42 U.S.C. § 3605 ...........................................................................................................24

42 U.S.C. § 3613 ...........................................................................................................24

**RULES**

Fed. R. Civ. P. 10(c) ...............................................................................................2, 3, 7

Fed. R. Civ. P. 12(b)(6) ......................................................................................1, 3, 6, 8

Fed. R. Civ. P. 9(b) .............................................................................................13, 14, 15

**REGULATIONS**

12 C.F.R. § 226 ..............................................................................................................8, 9

Defendants America's Servicing Company ("ASC"), U.S. Bancorp ("US Bancorp"), and U.S. Bank, N.A., as Trustee for Master Asset Backed Securities Trust 2006-FRE-1 ("US Bank/Trustee" and, collectively with ASC and US Bancorp, the "Moving Defendants"), submit this memorandum of law in support of their motion to dismiss Plaintiffs' Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

### PRELIMINARY STATEMENT

This action is an attempt by Plaintiffs, appearing *pro se* -- who are more than a year in arrears on the first mortgage on their home -- to divert attention away from the simple fact that they bought a house that they could not afford, stopped making their mortgage payments, and will now go to any lengths to avoid foreclosure. Seduced by an inviting housing market, Plaintiffs believed housing prices would continue to rise indefinitely and that they were entitled -- regardless of income, credit history, or financial wherewithal -- to acquire a bigger and better home. In the easy credit atmosphere of 2005, Plaintiffs found a mortgage lender willing to extend large amounts of credit to questionable borrowers, such as Plaintiffs. Plaintiffs ignored the risks and signed on the dotted line. Plaintiffs' attempt to avoid all responsibility for their role in digging their own financial hole must not be condoned by the Court.

Plaintiffs now sue, among others, Defendants ASC, US Bancorp, and US Bank/Trustee, none of which was involved with the origination of Plaintiffs' mortgage. In the modern mortgage market, shortly after a mortgage is made, it is common for the original lender to sell the mortgage loan to another buyer, who in turn often bundles that loan, along with other mortgage loans that share similar characteristics, into an investment pool. As part of this process, the servicing rights to those mortgages -- that is, the rights to collect the principal and interest on behalf of the investors -- are often sold to a servicing company, and a trustee is appointed to manage all of the mortgage loans contained in that investment pool, which are usually set up as trusts. The investment pool can then be bought or sold at will by investors in the mortgage market.

The Moving Defendants consist of ASC, the current servicer of Plaintiffs' first mortgage; US Bancorp, a named defendant with no connection to the transactions underlying this case; and US Bank/Trustee, the current assignee of Plaintiffs' first mortgage. Each of the Moving Defendants had no connection to Plaintiffs when Plaintiffs simultaneously took out both the first and the second mortgages that they needed to purchase a home in October of 2005. ASC became the first mortgage's servicer in February of 2006. US Bancorp had -- and has -- no connection to either of Plaintiffs' loans; indeed, US Bancorp is only mentioned in the caption and the allegations naming the parties: it is not the subject of a single substantive allegation in the Complaint. US Bank/Trustee, the current assignee of the first mortgage, also had no connection to the Plaintiffs until it was assigned the first mortgage in February of 2006, months after the mortgage was originated. The Moving Defendants are the true *victims*, not the perpetrators, of any alleged wrongdoing in connection with the first mortgage's origination. Indeed, with each month that goes by, ASC and US Bank/Trustee continue to sustain losses because of Plaintiffs' failure to make their mortgage payments. Nevertheless, Plaintiffs have brought this action asserting that the Moving Defendants should pay damages to Plaintiffs for the losses caused by Plaintiffs' folly in buying a home they could not afford.

Plaintiffs' refusal to accept responsibility for their mistakes apparently caused them to assert false allegations in their Complaint. Indeed, as set forth in this Memorandum's "Facts" section, Plaintiffs' key allegations are contradicted by the very documents they submitted as exhibits to the Complaint. Pursuant to Federal Rule of Civil Procedure 10(c), where Plaintiffs' allegations are flatly contradicted by the exhibits they have submitted in support of their Complaint, the Court must not credit the contradicted allegations in assessing the sufficiency of the Complaint. Here, many of Plaintiffs' allegations are directly counter to the exhibits to the Complaint. Most critically, their repeated assertion that they applied for a thirty-year fixed mortgage at seven percent interest is belied by the mortgage application that they admit to having signed, which on its face says that Plaintiffs applied for a "2/28 ARM," which by definition is an adjustable -- not a fixed -- rate mortgage with rates that are intended to adjust

and change over time.  Here, according to the application *signed by Plaintiffs*, the initial interest rate for that floating instrument applied for was hoped to be seven percent, with the interest rate expected to change each year thereafter.  But Plaintiffs did not lock in a 7% rate and the rate Plaintiffs qualified for at closing was an initial interest rate of 8.45%.

Accordingly, the Complaint cannot state a claim against any of the Moving Defendants and should be dismissed with prejudice.  *First,* as demonstrated in Point I below, none of Plaintiffs' substantive claims can survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  Specifically, Plaintiffs have based their claims against the Moving Defendants on (i) a claimed rescission right that does not -- and never did -- exist for purchase money mortgages; (ii) a flat-out misreading of the Home Ownership Equity Protection Act; (iii) allegations of deceptive practices, fraud, and conspiracy to commit fraud that have no basis against the Moving Defendants; (iv) RESPA claims with no nexus to the Moving Defendants; (v) their misinterpretation of New York's usury law; and (vi) allegations of discrimination under state and federal civil rights statutes that stem from nothing more than the mere fact of Plaintiffs' membership in a protected class.  Even under the most liberal pleading standards, Plaintiffs have failed to state *any* cognizable claims against the Moving Defendants.

*Second*, as shown in Point II below, the bulk of Plaintiffs' federal claims are time barred and therefore must be dismissed with prejudice.  Plaintiffs have failed to allege any facts that would entitle them to toll the applicable statutes of limitations.  *Third,* Plaintiffs have named two defendants who are simply unconnected to the claims they have brought.  By any standard, US Bancorp is a wrongly named defendant, with no conceivable nexus to this litigation.  It should be dismissed as such.  Similarly, because Plaintiffs have alleged no claims relating to the servicing of their loan, ASC, the loan's servicer, must be dismissed as a wrongly named defendant.

## FACTS[1]

Defendants accept as true solely for purposes of this motion to dismiss -- and only to the extent that they are not contradicted by the exhibits attached to the Complaint -- the facts as alleged in the Complaint.  Darrick Grimes and Yolanda Grimes owned a home, had two children, and both were employed as legal assistants.  (*See* Declaration of Steven M. Hecht in Support of Defendants' Motion to Dismiss ("Hecht Decl."), dated June 16, 2008, accompanying this motion at Ex. A ¶ 38, Ex. B at 3.)  Plaintiffs decided it was time to upgrade from the home they had owned in St. Albans, New York for seven years, to buy 23 Stacy Lee Drive, a nearly half-million dollar house with a pool situated on a two acre property in Newburgh, New York.  (Hecht Decl. Ex. A ¶ 38, Ex. C at 1.)  However, Plaintiffs' credit history was spotty and the first lender they approached to obtain a mortgage, Washington Mutual, turned them down.  (Hecht Decl. Ex. A ¶ 39, Ex D.)

But rather than reassess the feasibility of buying such an expensive house, Plaintiffs eagerly sought another lender.  The day after Washington Mutual denied their mortgage application, Mrs. Grimes went online and contacted other mortgage brokers and lenders through an Internet site, Nextag.com.  (*Id.* ¶¶ 39-40.)  She selected a mortgage broker, Jonathan Tanenbaum of WCS Lending, Inc. ("WCS Lending"), and applied for a mortgage loan.  (*Id.* ¶¶ 40, 42.)  However, Plaintiffs' credit history was a mediocre 578.  In addition, Plaintiffs needed to finance more than 80% of the purchase price of their proposed new home because they did not have enough cash to make a 20% down payment and pay their closing costs.  Accordingly, given these factors, a traditional thirty-year fixed mortgage would be unavailable or, even if available, very expensive.

Instead, Plaintiffs applied for -- and received -- two mortgages through WCS

---

[1]    Plaintiffs' allegations typically do not match the exhibits they have submitted in support of their Complaint.  Because Federal Rule of Civil Procedure 10(c) provides that exhibits to a complaint must be considered part of the complaint itself, the facts contained in exhibits to a complaint control over contradictory allegations in the complaint itself.  *Artco, Inc. v. Kiddie, Inc*, No. 88-cv-5734, 1989 U.S. Dist. LEXIS 13548, at *9-10 (S.D.N.Y. Nov. 15, 1989).

Lending (a mortgage broker) and the lender it located, Fremont Investment and Loan ("FIL"). (*Id.* ¶ 89.)  The first mortgage was for $405,000.00, which was 80% of the purchase price they had agreed to pay.  (*Id.*)  This mortgage, as disclosed clearly on all forms mailed to (and signed by) Plaintiffs, was a thirty-year mortgage with the first two years fixed at an interest rate of 8.45%, with the rate to adjust periodically after the initial two year "lock in" period.[2]  The second mortgage was a fifteen-year fixed rate mortgage for $22,500 at a rate of 12.75% and included language that provided for a prepayment penalty (totaling approximately $1,300) during the first year.  (*Id.* ¶¶ 89-90.)[3]

It is undisputed that on September 20, 2005, Plaintiffs signed the mortgage application contained in Exhibit 3 to the Complaint.  (*Id.* ¶ 58.)  While this application listed an initial interest rate of 7%, on the same day, as part of the same paperwork, Plaintiffs also signed a notice from their mortgage broker, WCS Lending, that "I acknowledge that my interest rate is currently floating and is subject to daily changes based upon market fluctuations."[4]  Further, the application on its face was for a 2/28 ARM -- that is, for an adjustable rate mortgage in which the rate would begin to "float," or change, after two years.  Finally, this version of the mortgage application -- which Plaintiffs acknowledge signing more than twenty days *before* the closing -- contains two separate listings of $1,076.00 in "Net Rental Income."  Therefore, contrary to the

---

[2]    The crux of Plaintiffs' allegations is that they were promised, applied for and anticipated receiving a traditional thirty-year fixed rate mortgage at 7%.  However, the loan application the Plaintiffs claim they signed belies this claim in that it contains numerous disclosures that (1) the loan they applied for was a 2/28 ARM (Adjustable Rate Mortgage), and (2) they had not taken steps to lock even their initial hoped-for interest rate of 7% prior to closing.  (Hecht Decl. Ex. B at 3, 11.)

[3]    Plaintiffs' Complaint contains numerous allegations relating to the second mortgage.  The second mortgage, however, is wholly irrelevant to Plaintiffs' claims against the Moving Defendants because none of these defendants has -- or ever has had -- any connection to this second mortgage.  Neither ASC nor US Bank/Trustee purchased the servicing rights or the second mortgage itself, and thus no allegations of fraud with respect to the second mortgage can be made against the Moving Defendants.

[4]    This acknowledgment of a floating rate directly contradicts Plaintiffs' allegations at ¶¶ 61, 78, 82, 84 that they had been guaranteed a fixed rate of interest throughout the closing process.  As set forth above, because the exhibits directly contradict Plaintiffs' allegations, the exhibits control.  *Artco*, 1989 U.S. Dist. LEXIS 13548, at *9-10.

allegations in the Complaint, Plaintiffs themselves claimed in the loan documents that they would be receiving $1,076 a month in rental income from their home in St. Albans, NY.[5]

Plaintiffs closed both mortgage loans and the sale of 23 Stacy Lee Drive on October 12, 2005, and have resided there since October 29, 2005.  (*Id.* ¶ 16.)  Plaintiffs have not alleged any facial deficiencies with respect to the loan documents and disclosures they signed on October 12, 2005.  Rather, they claim that they were deceived because of a never-disclosed additional mortgage application that they claim was forged, although they have not stated what harm they have suffered as a result of this deception.  Also, they allege that -- notwithstanding the crystal-clear loan documents -- they thought they were obtaining a fixed-rate loan when in fact they had applied for a floating adjustable-rate loan.

Plaintiffs continue to reside at 23 Stacy Lee Court today, although they are currently facing foreclosure in a separate action pending in New York State Court because their loan is more than a year in arrears.[6]  In that action, Plaintiffs are represented by counsel and they have filed an amended answer asserting fraud in the inducement as an affirmative defense to the foreclosure action. (Hecht Decl. Ex. E.) On February 1, 2006, more than three months after the complained-of acts, defendant ASC acquired the servicing rights to Plaintiffs' first mortgage.  Simultaneously, the loan was sold by defendant Fremont Investment & Loan and packaged into an asset-backed securities trust by defendant US Bank/Trustee, which became the Trustee of this

---

[5]  Plaintiffs' very assertion in their mortgage application that they would receive $1,076 in rental income each month directly contradicts Plaintiffs' Complaint at ¶¶ 44, 48, 49, 139, 143, and 144, where they claim they never signed off on their mortgage broker's proposal to set down a fair rental value for their current residence in the event that it was not sold before their new purchase.  On the contrary, according to the documents signed by Plaintiffs, they were aware of -- and participated in -- this deception. (Hecht Decl. Ex. B at 6.)

[6]  Plaintiffs have not made a mortgage payment on their first mortgage since August of 2006.  The foreclosure proceeding is pending in New York Supreme Court, Orange County, Index No. 06-10714 (*see* Hecht Decl. Ex. F), and the Court may take judicial notice of the pleadings in that action:  "When deciding a motion to dismiss pursuant to Rule 12(b)(6) . . . [a] district court may take judicial notice of documents filed in other courts not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings."  *Carruthers v. Flaum*, 388 F. Supp. 2d 360, 370 (S.D.N.Y. 2005) (citations omitted).

mortgage-backed investment product. Plaintiffs have failed to allege any connection between the underlying transactions and defendant US Bancorp.

## **LEGAL STANDARD**

Notwithstanding that inferences are generally drawn in favor of the Plaintiff when evaluating the legal sufficiency of a complaint, a "reviewing court is by no means under a concomitant obligation to accept unsupported inferences or sweeping legal conclusions in the form of factual allegations, . . . [n]or is the Court required to accept conclusory allegations on the legal effect of the events plaintiff has set out if these allegations do not reasonably follow from what has happened, or if these allegations are contradicted by the description itself." *Artco, Inc. v. Kiddie, Inc.*, No. 88-cv-5734, 1989 U.S. Dist. LEXIS 13548, at *8-9 (S.D.N.Y. Nov. 15, 1989) (citation and quotation marks omitted). In particular, where a plaintiff has incorporated exhibits into its pleadings, "[p]ursuant to Fed. R. Civ. P. 10(c), the content of such writings must be considered in determining the existence of a claim for relief . . . and the court is not bound to accept the pleader's allegations as to the legal effect of those exhibits. Moreover, any disparity between an attached writing and the allegations in the complaint are to be read against the pleadings." *Id.* at *9-10 (citations omitted).

The standard for evaluating the legal sufficiency of a complaint was recently addressed by the United States Supreme Court in *Bell Atlantic v. Twombley*, 127 S. Ct. 1955 (2007). The *Bell Atlantic* Court held that Plaintiffs' allegations must adhere to a "plausibility" standard, by which it must be plausible -- not merely possible -- that the facts set forth by Plaintiffs entitle them to relief. *Id.* at 1966. Thus, all plaintiffs must allege facts compatible with the substantive law under which they seek relief. *Allah v. New Century Mortgage Corp.*, No. 06-cv-3031, 2006 U.S. Dist. LEXIS 80666, at *5-6 (E.D.N.Y. Nov. 4, 2006) (holding that even a *pro se* Plaintiff is required to allege facts sufficient to state a claim against a defendant).[7]

---

[7] While *pro se* plaintiffs may be entitled to a more liberal pleading standard, courts do not extend unlimited license to allege at will and such plaintiffs are still bound by the rules of pleading. 61A Am. Jur. 2d *Pleading* § 31 (1999) (citing *Salahuddin v. Jones*, 992 F.2d 447 (2d Cir. 1993)).

Here, many of Plaintiffs' key allegations are expressly contradicted by the very documents submitted as exhibits in support of the Complaint. For example, at Paragraph 58 of the Complaint, the Plaintiffs contend as follows:

> On or about September 20, 2005, the Grimes[ ] completed, signed and dated the mortgage application and related pre-disclosure documents with a fixed interest rate of **7%** and submitted said documents to WCS Lending for mortgage financing . . . . Copies of said documents are attached hereto as ***Exhibit 3***."

Thus, according to Plaintiffs' own Complaint, the documents at Exhibit 3 are not forged (contrary to their allegations). Moreover, in direct contravention to the allegations quoted above, Exhibit 3 -- which Plaintiffs admit they signed on September 20, 2005, weeks before they closed on the property -- is an application for an *adjustable rate mortgage.* In addition, among the documentation included at Exhibit 3 is a disclosure, signed by Plaintiffs, stating that the initial proposed rate of 7% was not locked in, and therefore would continue to float until closing. (Hecht Decl. Ex. A ¶¶ 45, 58.)

## ARGUMENT

## POINT I

### PLAINTIFFS' COMPLAINT SHOULD BE DISMISSED PURSUANT TO RULE 12(B)(6) FOR FAILURE TO STATE A CLAIM

A.    **Plaintiffs' First And Second Causes Of Action Under The Truth In Lending Act ("TILA"), As Amended By The Home Ownership Equity Protection Act ("HOEPA"), Should Be Dismissed Because They Are Not Cognizable Against Assignees Or Servicers Of Mortgage Loans.**

1.    *Plaintiffs Are Not Entitled To Rescind Their Residential Mortgage Transaction.*

Plaintiffs' Complaint must be dismissed pursuant to Rule 12(b)(6) to the extent that it seeks rescission of the transaction pursuant to TILA, 15 U.S.C. § 1601 *et seq.*, as amended by HOEPA, and specifically, 15 U.S.C. § 1635 and its implementing regulation, 12 C.F.R. § 226 (Regulation Z). It is well settled that where the Complaint and loan documents unambiguously

show that the mortgage loan was used to finance the acquisition of an individual's primary residence, Section 1635 does not allow rescission. *See Nembhard v. Citibank, N.A.*, No. 96-cv-3330 , 1996 U.S. Dist. LEXIS 20062 (E.D.N.Y. Oct. 25, 1996) ("Since the complaint itself and the loan documents submitted as exhibits to the complaint unambiguously state that the funds were used to finance the acquisition of the home and that the home was to be occupied by the plaintiff as her primary residence, it is clear that Regulation Z provides no right of rescission."); *Allah*, 2006 U.S. Dist. LEXIS 80666, at *8 ("[W]hen a complaint and attached loan documents 'unambiguously state that the funds were used to finance the acquisition of the home and the home was to be occupied by the plaintiff as her primary residence . . . Regulation Z provides no right of rescission.'").[8]

   Plaintiffs claim that they were entitled to -- and did -- rescind their primary mortgage pursuant to Section 1635 by mailing three "notice[s] of rescission" to ASC.  But Plaintiffs' "notices of rescission" were ineffective as a matter of law.  While Section 1635 governs rights of rescission for certain loan transactions, Section 1635(e) provides: "This section does not apply to (1) a residential mortgage transaction as defined in section 1602(w) of this title."  Plaintiffs' mortgage is a residential mortgage transaction as defined in section 1602(w): "The term 'residential mortgage transaction' means a transaction in which a mortgage . . . is created or retained against the consumer's dwelling to finance the acquisition . . . of such dwelling."  Plaintiffs do not contest (indeed, they allege) that "[o]n October 12, 2005, the day of the closing, the Grimes' [sic] received a first mortgage of $405,000 with an interest rate of 8.45% and a second mortgage of $22,500 with an interest rate of 12.75% from Fremont Investment and Loan."  (Hecht Decl. Ex. A ¶ 88.)  Yet the first mortgage -- issued on the day Plaintiffs bought their home to provide them with the necessary financing -- is the very loan Plaintiffs attempted to rescind.  Because Section 1635(e) exempts residential mortgage transactions from the classes of loans borrowers may rescind, Section 1635's procedures for

---

[8] Regulation Z, or 12 C.F.R. § 226, is the TILA-enabling regulation that sets out the scope of TILA's rescission provision.

rescission of loans are inapplicable as a matter of law.

>    **2.    Neither ASC Nor US Bank/Trustee Is Liable To Plaintiffs For Damages Pursuant To TILA.**

ASC has been the servicer of Plaintiffs' first mortgage since February of 2006, but it is not an assignee or a creditor pursuant to TILA, because it is not -- and never was -- the owner of the obligation.  TILA provides: "A servicer of a consumer obligation arising from a consumer credit transaction shall not be treated as an assignee of such obligation for purposes of this section unless the servicer is or was the owner of the obligation."  15 U.S.C. § 1641(f)(1).  Therefore, Plaintiffs' TILA claims against ASC lack merit.

US Bank/Trustee is the current assignee of Plaintiffs' first mortgage.  TILA limits an assignee's liability to only those violations that are "apparent on the face of the disclosure statement."  15 U.S.C. § 1641(a); *see also Mayfield v. Gen. Elec. Capital Corp.*, No. 97-cv-2786, 1999 U.S. Dist. LEXIS 4048, at *14 (S.D.N.Y. Mar. 31, 1999) (dismissing assignee liability claims under TILA where "[p]laintiffs fail to allege that a TILA violation was apparent from the face of the disclosure statement").  Thus, US Bank/Trustee cannot be liable for TILA violations committed by the mortgage broker or original lender, no matter how egregious, unless Plaintiffs allege (without submitting contradictory exhibits) that these violations were apparent from the face of the disclosure statements provided to US Bank/Trustee.

Here, Plaintiffs have not advanced any allegations or evidence that the alleged TILA violations should have been apparent to US Bank/Trustee from the face of the mortgage disclosure documents.  Rather, Plaintiffs have alleged that the Moving Defendants failed to honor their "notices of rescission," and "because of fraud, forgery and conflicting representations, Defendants failed to make required material disclosures clearly and conspicuously in writing."  But Plaintiffs had no right of rescission, and Defendants did not violate TILA by failing to honor a nonexistent right.  In addition, Plaintiffs have not proffered any allegations that US Bank/Trustee had notice *from the face of the disclosure documents it was assigned* that Plaintiffs had been victims of fraud or forgery.  Rather, the gravamen of Plaintiffs'

Complaint is that their mortgage broker assured them of certain terms, but that they signed documents containing different terms.

As an assignee of the loan, US Bank/Trustee cannot be held liable for these conflicting representations, because they were not apparent from the face of the documents assigned. Indeed, courts in the Second Circuit have held that plaintiffs cannot state valid TILA claims where they signed TILA Disclosure Statements acknowledging the terms of their mortgage. *See, e.g.*, *Johnson v. Washington Mut. Bank, F.A.*, No. 03-cv-4704, 2006 U.S. Dist. LEXIS 26729, at *16 (E.D.N.Y. May 4, 2006) (dismissing TILA complaint where plaintiff signed a Truth in Lending Disclosure Statement acknowledging the terms of his mortgage, including the annual percentage rate). Therefore, Plaintiffs' TILA claims against US Bank/Trustee fail as a matter of law because there were no conflicting or missing representations apparent from the face of the disclosure documents, and Plaintiffs themselves do not deny signing these documents.

### 3. Plaintiffs' Second Cause Of Action Pursuant To HOEPA Fails Because Their First Mortgage Is Not Subject To HOEPA.

Plaintiffs' Home Ownership and Equity Protection Act ("HOEPA") claim fails as a matter of law because the first mortgage complained of is not a HOEPA loan as defined by 15 U.S.C. § 1602(aa). Plaintiffs claim that pursuant to 15 U.S.C. § 1641(d), the liability of any assignees of their loan is as expansive as the liability of the loan originators. (Hecht Decl. Ex. A ¶¶ 129-30.) But this provision applies only to HOEPA loans, and Plaintiffs' first mortgage is not, by definition, a HOEPA loan. *See Johnson v. Scala*, No. 05-cv-5529, 2007 U.S. Dist. LEXIS 73442, at *13 (S.D.N.Y. Oct. 1, 2007) (holding that where a loan "is clearly a purchase money mortgage loan and not a second loan or refinancing," the loan is not covered by the terms of HOEPA).

A loan is subject to HOEPA if it is "a consumer credit transaction that is secured by the consumer's principal dwelling, *other than a residential mortgage transaction*, a reverse

mortgage transaction, or a transaction under an open end credit plan . . . ." 15 U.S.C. § 1602(aa). Because Plaintiffs' loan was given in a "residential mortgage transaction" as defined by Section 1602(w), it is not a Section 1602(aa) mortgage and therefore it is not governed by 15 U.S.C. § 1639. Plaintiffs' Section § 1639 claims therefore fail as a matter of law. Further, because Section 1641(d) only expands assignees' liability for HOEPA loans, and because the loan complained of is not a HOEPA loan, US Bank/Trustee is not subject to assignee liability pursuant to HOEPA. Thus, Plaintiffs are not entitled to any of the relief sought from the Moving Defendants in Counts One or Two of the Complaint.

### B. Plaintiffs' Third Cause Of Action For Violations Of New York State General Business Law § 349 (The "Deceptive Practices Act") Fails Because Plaintiffs Have Failed To Plead More Than Conclusory Allegations Against The Moving Defendants.

Plaintiffs' claim for deceptive business practices under Section 349 of the New York General Business Law fails as a matter of law. Section 349 of the General Business Law is a consumer protection law. To assert a private claim under Section 349, a plaintiff must allege: (1) that acts or practices at issue are consumer oriented; (2) that such acts or practices are deceptive or misleading in a material way; and (3) that plaintiff has been injured by reason of those acts. *Lava Trading, Inc. v. Hartford Fire. Ins. Co.*, 326 F. Supp. 2d 434, 438 (S.D.N.Y. 2004). For conduct to be considered "consumer oriented" the defendant's conduct must have a broad impact on consumers. Isolated private disputes such as this case "do not fall within the ambit of the statute." *USAlliance Fed. Credit Union v. CUMIS Ins. Soc'y, Inc.*, 346 F. Supp. 2d 468, 471-72 (S.D.N.Y. 2004); *see also Barkley v. Olympia Mortgage Co.*, 04-cv-875, 2007 U.S. Dist. LEXIS 61940, at *58-59 (E.D.N.Y. Aug. 22, 2007) (holding that "the sale of a home does not by itself constitute consumer-oriented conduct").

In *USAlliance*, the policyholder pled a claim under Section 349 against an insurance and bond coverage company, and alleged that the insurance company's denial of the policyholder's insurance claim was "part of a pattern of conduct that is aimed at the public generally." *Id.* at 472. The court held such conclusory allegations were not enough to survive a

motion to dismiss: "plaintiffs stating a claim under this provision must allege with some specificity the allegedly deceptive acts or practices that form the basis for the claim." *Id.* Indeed, a contrary rule would permit a plaintiff to convert almost any garden-variety dispute into a violation of Section 349. *Id.; see also Northwestern Mut. Life Ins. Co. v. Wender*, 940 F. Supp. 62, 65 (S.D.N.Y. 1996) (dismissing § 349 counterclaim where "there are no specific allegations of an impact on consumers at large, or that Plaintiff employed deceptive practices. Conclusory allegations are insufficient to withstand a motion to dismiss").

In this case, Plaintiffs fail to allege any deceptive acts or practices on the part of any of the Moving Defendants, much less any injury to the consuming public at large.[9] The sum total of Plaintiffs' allegations is that ASC and U.S. Bank/Trustee purchased the servicing rights to, or were assigned, Plaintiffs' first mortgage, and that they refused to agree to Plaintiffs' attempt to rescind the first mortgage where such a rescission had no basis in fact or law. Because Plaintiffs have pled no facts supporting their Section 349 claims against the Moving Defendants, those claims must be dismissed.

### C.    Plaintiffs' Fourth Cause Of Action, Fraud, Fails For Lack Of Particularity Under Rule 9(b).

Similarly, Plaintiffs' fraud claim cannot lie against any of the Moving Defendants. Under New York law, the elements of a fraud claim are: (1) a false representation (2) of a material fact (3) with intent to defraud and (4) reasonable reliance on the representation (5) causing damage to the plaintiff. *Barkley*, 2007 U.S. Dist. LEXIS at *59; *see also Stuart Silver Assoc. v. Baco Dev. Corp.*, 665 N.Y.S.2d 415, 417 (App. Div. 1997). Plaintiffs have failed to plead these elements against the Moving Defendants because they have not alleged that any of the Moving Defendants made fraudulent statements of material fact, acted with intent to

---

[9]    Plaintiffs' Complaint specifies that the third cause of action is against all Defendants with the exception of Tanenbaum, but there are no specific allegations in this section with respect to any of the Moving Defendants. Although it is unclear whether Plaintiffs meant to plead this claim against the Moving Defendants, these causes of action should be dismissed against them in any event.

defraud, induced Plaintiffs to reasonably rely on their fraud, or caused damages.

Indeed, Plaintiffs' fraud claims are subject to the heightened pleading standard under Federal Rule of Civil Procedure 9(b), which requires allegations of fraud to be pled with particularity.[10] As explained by the *Barkley* court:

> Although under 9(b), "[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally," the Second Circuit has stated that courts must not mistake the relaxation of Rule 9(b)'s specificity requirement regarding condition of mind for a license to base claims of fraud on speculation and conclusory allegations . . . . Plaintiffs must allege facts that give rise to a strong inference of fraudulent intent."

2007 U.S. Dist. LEXIS, at *59-60 (quoting *Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 52 (2d Cir. 1995)); *see also Blaize-Sampeur v. McDowell*, No. 05-cv-4275, 2006 U.S. Dist. LEXIS 75764, at *10 (E.D.N.Y. Oct. 18, 2006) ("Fed. R. Civ. P. 9(b) requires all averments of fraud and the circumstances constituting fraud to be stated with particularity. In order to comply with Rule 9(b), the complaint must: (1) specify the statements the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent" (citing *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 291 (2d Cir. 2006)); *Mercado v. Playa Realty Corp.*, 03-cv-3427, 2005 U.S. Dist. LEXIS 14895, at *40 (E.D.N.Y. July 7, 2005) (same). Further, "[w]here multiple defendants are asked to respond to allegations of fraud, the complaint should inform *each defendant* of the nature of his alleged participation in the fraud." *Blaize-Sampeur*, 2006 U.S. Dist. LEXIS, at *11.

In this case, Plaintiffs have failed to plead any specific allegations of fraud against the Moving Defendants. Indeed, the entirety of the purported fraud complained of took place prior to ASC becoming the servicer or US Bank/Trustee becoming the assignee of Plaintiffs' mortgage, and Plaintiffs have not alleged a single statement by any of the Moving Defendants. Thus Plaintiffs have not -- because they cannot -- pled any false misrepresentations of material

---

[10]    Specifically, Rule 9(b) provides: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

fact by the Moving Defendants.  Further, they have not pled any intent by the Moving Defendants, nor have they claimed reasonable reliance on any representations made these Defendants.  If anything, ASC and US Bank/Trustee were themselves the victims of any alleged fraud.

> **D.    Plaintiffs' Fifth Cause Of Action For Civil Conspiracy To Commit Fraud Is Not A Valid Cause Of Action Under New York Law.**

To the extent that Plaintiffs allege a separate claim for civil conspiracy to commit fraud, New York does not recognize such a cause of action.  *See Jebran v. LaSalle Bus. Credit, LLC*, 824 N.Y.S.2d 224, 225 (App. Div. 2006) ("New York does not recognize a substantive tort of conspiracy."); *Synder v. Puente de Brooklyn Realty Corp.*, 746 N.Y.S.2d 517, 521 (App. Div. 2002) (claim for "conspiracy to commit fraud" not recognized under New York law); *Aurora Loan Servs. v. Grant*, 851 N.Y.S.2d 56 (Sup. Ct. 2007) ("[T]here is no independent tort of civil conspiracy recognized in this State.").  Because civil conspiracy to commit fraud is not a tort under New York law, Plaintiffs' claim for such conspiracy cannot survive a motion to dismiss.  Further, Plaintiffs' claim for conspiracy to commit fraud would fail even if styled as an "aiding and abetting" fraud claim.  Even in an aiding and abetting context, Rule 9(b) requires Plaintiffs to plead fraud claims with particularity.  As set forth above, Plaintiffs have failed to plead fraud against the Moving Defendants with particularity.

> **E.    Plaintiffs' Sixth Cause Of Action For Violations Of The Real Estate Settlement Procedures Act By Payment Of An Alleged "Kickback" Does Not State A Claim.**

The Real Estate Settlement Procedures Act, 12 U.S.C. § 2607 ("RESPA") prohibits payment of kickbacks and unearned fees in the context of a residential mortgage transaction.  But payments do not violate Section 2607 where (1) they are paid for services performed and (2) they are disclosed on a HUD-1 settlement form.  *See Allah*, 2006 U.S. Dist. LEXIS 80666, at *12-13 (holding that payments are not prohibited as violations of Section 2607 where they are payment for services performed that were disclosed on the HUD-1 forms).

Plaintiffs have pled that all of the complained of fees were listed on the HUD-1 Settlement Statement. (Hecht Decl. Ex. A ¶ 188, Ex. G.)  Indeed, Plaintiffs "discovered" them by reviewing the HUD-1.  (*Id.*)  WCS Lending functioned as the mortgage broker and Fremont Investment and Loan as the lender for Plaintiffs' purchase.  As such, both of those parties were entitled to compensation.  Moreover, there is not even any allegation of any payment made to any of the Moving Defendants for services not performed, and Plaintiffs have thus failed to state a RESPA claim against the Moving Defendants.

> **F.    Plaintiffs' Seventh Cause Of Action Pursuant To New York State's Usury Statute Does Not State A Cause Of Action Against The Moving Defendants Because It Relates To A Loan That Was Not Serviced By Or Assigned To Any Of Them.**

Plaintiffs' claim under New York's usury statute, New York State General Obligations Law Section 5-501, fails as a matter of law for two reasons: *first*, the complained of prepayment penalty applies to a loan that ASC does not service and US Bank/Trustee was never assigned; and *second*, the alleged prepayment penalty is not a violation of Section 5-501. Here, Plaintiffs complain that their *second* mortgage (which they do not allege was ever serviced by or assigned to any of the Moving Defendants) contained a one-year prepayment penalty.  Because all three of the Moving Defendants are strangers to the second mortgage, no cause of action has been stated against them.  The fact that this loan was issued simultaneously with the primary mortgage, to which ASC and US Bank/Trustee do have some relationship, does not confer liability upon them with respect to the second mortgage.  In addition, even if ASC or US Bank/Trustee could be held liable for any violations connected to the second mortgage, the second mortgage loan itself does not violate Section 5-501(3).  Plaintiffs have alleged that the second mortgage loan contained a prepayment provision that lasted for one year *and* was expressly set forth in the loan contract.  But that is precisely the type of prepayment provision endorsed by Section 5-501(3)(b), which allows prepayment penalties to be imposed during the first year *so long as* they are expressly disclosed in the loan contract.  Here, Plaintiffs "discovered" the prepayment penalty simply by reading the loan contract.  Therefore, Section 5-

501(3)(b) has not been violated, and Plaintiffs have not set forth a claim for damages with regard to this loan.

### G.    Plaintiffs' Eight And Eleventh Causes Of Action For "Reverse Redlining" Fail For Lack Of The Required Elements.

Plaintiffs' federal and state claims against the Moving Defendants for "reverse redlining" also fail as a matter of law because Plaintiffs have failed to plead the basic elements of such a claim.  Federal courts have recognized reverse redlining -- defined as "the practice of extending credit on unfair terms" to residents of specific geographic areas due to the income, race, or ethnicity of the area's residents -- as a cause of action under the Fair Housing Act, 42 U.S.C. § 3601 *et seq.  See, e.g.*, *Hargraves v. Capital City Mortgage Corp.*, 140 F. Supp. 2d 7, 20 (D.D.C. 2000).  New York State Human Rights Law, Executive Law Section 296(5), has been construed by courts as functionally identical to the Fair Housing Act, so Plaintiffs' Section 296(5) claim requires Plaintiffs to establish the same elements required by the Federal Fair Housing Act.  *See Barkley,* 2007 U.S. Dist. LEXIS 61940, at *56-57 (holding that the standards relevant to claims under the New York State Human Rights Law "parallel those applicable under the Fair Housing Act").  Because Plaintiffs have failed to establish the elements of a reverse redlining claim, Plaintiffs' federal and state claims must be dismissed against the Moving Defendants.

Courts have set forth four elements for establishing a *prima facie* reverse redlining claim:

> [I]n order to establish a *prima facie* case of discrimination based on reverse redlining, a plaintiff must show:
>
> (1) that she is a member of a protected class; (2) that she applied for and was qualified for loans; (3) that the loans were given on grossly unfavorable terms; and (4) that the lender continues to provide loans to other applicants with similar qualifications, but on significantly more favorable terms.  In the alternative, if the plaintiff presents direct evidence that the lender intentionally targeted her for unfair loans on the basis of sex and marital status, the plaintiff need not also show that the lender makes loans on more favorable terms to others.

*Barkley*, 2007 U.S. Dist. LEXIS 61940, at *44 (quoting *Matthews v. New Century Mortgage Corp.*, 185 F. Supp. 2d 874, 886-67 (S.D. Ohio 2002)).

Plaintiffs have failed to meet the second element[11] of a reverse redlining cause of action because they have not offered evidence to prove that they were qualified for loans.  The *Barkley* court explained that this element would be met where plaintiffs adequately alleged that they qualified for a "fairly priced" mortgage.  *See id* at *48.  But here, Plaintiffs have alleged precisely to the contrary: they alleged that their application for a (presumably) fairly priced mortgage from Washington Mutual Bank was *denied*. Plaintiffs have not only failed to proffer allegations that they applied for *and* were qualified for what they deem "fairly priced" loans; they have instead provided evidence that they were *not* qualified for "fairly priced" loans.  In the face of allegations that the Plaintiffs had *not* qualified for a "fairly priced" loan, it is not reasonable for the Court to assume that Plaintiffs could have qualified for a thirty-year loan at a fixed 7% rate of interest.

Plaintiffs have also failed to establish the third element of a reverse redlining claim; *i.e.*, that the loan they entered into was offered on grossly unfavorable terms.  The *Barkley* court relied primarily on evidence that loans at issue were based on "grossly inflated appraisal[s]," which inflated the value of the homes by $100,000 to $185,000.  *Id.* at *2-9, 15. Here, Plaintiffs' only allegation regarding the appraisal was that Plaintiffs "now wonder if the appraisal were [sic] inflated to complete [the] transaction."   (Hecht Decl. Ex. A ¶ 104.) Plaintiffs' conclusory "wondering" is not sufficiently well-pled to be read as an allegation that the appraisal was in fact inflated.

Finally, Plaintiffs have failed to establish the fourth element of a reverse redlining claim.  To prove the fourth element, Plaintiffs must allege *either* than they were intentionally targeted *or* that the lender continued to provide loans to borrowers who were not members of

---

[11]    ASC and US Bank/Trustee do not dispute that Plaintiffs, as African-Americans, are members of a protected class for purposes of the Fair Housing Act, and thus ostensibly satisfy the first element of reverse redlining.

protected classes on significantly more favorable terms. Plaintiffs have failed to meet this element through either avenue. *First,* Plaintiffs have not offered a single allegation that they were intentionally targeted by any of the defendants. To prove that they were intentionally targeted, Plaintiffs must offer some evidence that the defendant was seeking out, either directly or indirectly, members of the protected class as potential victims of their alleged discriminatory scheme. *See Barkley,* 2007 U.S. Dist. LEXIS 61940, at *36-37 (finding intentional targeting where (1) company placed ads in a newspaper serving an immigrant community, but not in similar newspapers serving primarily white neighborhoods; (2) agents showed minority targets housing stock in minority neighborhoods only; (3) sales force told buyers that the defendants "take care of" their own and had an interest in helping African-Americans to acquire homes). Plaintiffs have failed to make such allegations here. *Second,* Plaintiffs have not offered any evidence that the lender continued to provide loans to borrowers who were not members of protected classes on significantly more favorable terms. Instead, Plaintiffs rely only on their own conclusory assertions that defendants engaged in discriminatory lending practices, acted with discriminatory animus in doing so, and that these practices had negative effects on the minority community. (Hecht Decl. Ex. A ¶¶ 195-97.) Such conclusory allegations are insufficient as a matter of law and therefore Plaintiffs' federal and state reverse redlining claims must be dismissed.

> **H.    Plaintiffs' Ninth Cause Of Action For Violation Of The Equal Credit Opportunity Act Fails For Lack Of The Required Elements.**

For similar reasons, Plaintiffs' Equal Credit Opportunity Act ("ECOA") claims pursuant to 15 U.S.C. § 1691 also fail as a matter of law. The elements for a viable ECOA claim are set forth in *Washington Mutual Bank,* 2006 U.S. Dist. LEXIS at *17-18. To establish an ECOA claim, a plaintiff must allege that: "(1) he was a member of a protected class[;] (2) he was qualified for the loan requested[;] (3) the lender declined the loan[;] and (4) the lender showed a preference for a non-protected individual." *Id.* at *17-18. Where the plaintiff alleges disparate

impact, he must also allege defendant's discriminatory policy or practice. *Id.* Where the plaintiff alleges disparate treatment, however, he must articulate not only that he was qualified for the loan, but that he was more qualified than other applicants, yet was denied credit. *Id.*

Plaintiffs have not established that (a) they were qualified for the loan requested; or (b) that the lender showed a preference for a non-protected individual. A plaintiff's ECOA claim will fail where he "fail[ed] to allege that he was qualified for a . . . mortgage, that defendant showed a preference for a non-protected individual, or that defendants engaged in a discriminatory practice in furtherance or followed a discriminatory policy." *Id.* at *19. Here, Plaintiffs have alleged that they were turned down for a thirty-year fixed mortgage at a 7% rate of interest by Washington Mutual. They have not provided evidence that they ever applied for -- much less were turned down for -- a thirty-year *fixed* mortgage at a 7% rate of interest from any defendant in this action. In addition, Plaintiffs have not presented any allegations that any defendants showed preferences for non-protected individuals over Plaintiffs. Finally, Plaintiffs have not alleged a specific discriminatory policy or practice engaged in by defendants, nor have they articulated that they were more qualified for a loan than other applicants, yet were denied credit. Therefore, Plaintiffs have failed to satisfy the minimum standards for pleading a cognizable ECOA claim against any of the Moving Defendants.

## I.  Plaintiffs' Tenth Cause Of Action For Violations Of §§ 1981, 1982, And 1985 Of The Civil Rights Act Fails Because Plaintiffs Have Failed To Establish A *Prima Facie* Case.

Plaintiffs have not stated a claim against any of the Moving Defendants for violations of the Civil Rights Act. The elements for §§ 1981 and 1982 claims are as follows:

> Sections 1981 and 1982 ban discrimination in various financial transactions, including making and enforcing contracts and purchasing real and personal property. To state a claim for relief under Sections 1981 and 1982, a complaint must allege: (1) that the plaintiff is a member of a racial minority; (2) that the defendant intended to discriminate on the basis of race; and (3) that the discrimination concerned one or more activities enumerated in Section 1981 or Section 1982.

*Barkley,* 2007 U.S. Dist. LEXIS 61940, at *33-34. Plaintiffs' claims against ASC and US Bank/Trustee are based on their allegation that ASC and US Bank/Trustee "intentionally failed to acknowledge, investigate or resolve disputes brought to their attention in a timely manner by African-American consumers, in violation of 42 U.S.C. § 1982." (Hecht Decl. Ex. A ¶ 214.) But these allegations are purely conclusory, and Plaintiffs provide no additional facts to back up these claims. Reading the complaint in the light most favorable to Plaintiffs, their allegation against ASC and US Bank/Trustee for failure to resolve disputes is apparently a reference to ASC and US Bank/Trustee's refusal to rescind the first mortgage. But holders of first mortgages that are used to acquire real estate are exempt from 15 U.S.C. § 1635's rescission provision. Therefore, ASC and US Bank/Trustee did not engage in actionable behavior by refusing to rescind the loan. Similarly, Plaintiffs cannot satisfy the second element of a § 1981 or § 1982 claim because they have not alleged facts supporting their conclusory assertion that ASC or US Bank/Trustee intended to discriminate on the basis of race.

Plaintiffs have also failed to plead a meritorious Section 1985(3) claim. As explained by the *Barkley* court:

> Section 1985(3) prohibits two or more persons from conspiring for the purpose of depriving any person of the equal protection of the laws. The four elements of a Section 1985(3) claim are: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of that conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right of a citizen of the United States.

2007 U.S. Dist. LEXIS at *34-35 (quotation omitted); *see also Johnson v. Washington Mut. Bank, F.A.*, 216 F. Appx. 64, 66 (2d Cir. 2007) ("To state a claim under 42 U.S.C. § 1985(3), a plaintiff must plead that two or more persons entered into a conspiracy to deprive him of his right to equal protection or to equal privileges and immunities under the laws. [Plaintiff]'s amended complaint contains no allegation that defendants' challenged actions were based on race or any other invidious classification. Thus, the district court properly dismissed those

claims for failure to state a claim upon which relief could be granted." (citations omitted)).  Here, Plaintiffs have failed to allege a conspiracy of any sort.  *First,* as set forth in the above discussion of Plaintiffs' §§ 1981 and 1982 claims, Plaintiffs have not alleged any prohibited conduct on the part of the Moving Defendants.    Indeed, Plaintiffs rely solely on their §§ 1981 and 1982 allegation in support of their § 1985 conspiracy claim.  (Hecht Decl. Ex. A ¶ 215.)  *Second*, Plaintiffs have not alleged any specific act that would constitute "an act in furtherance of the conspiracy."  *Third*, Plaintiffs have not alleged that the Moving Defendants acted for the purpose of depriving Plaintiffs of equal protection or equal privileges and immunities under the laws.  Therefore, Plaintiffs have failed to state a legally sufficient Section 1985(3) claim, and this cause of action should also be dismissed.

In essence, Plaintiffs attempt to argue that the Moving Defendants have incurred liability pursuant to §§ 1981, 1982, and 1985(3) simply because Plaintiffs are members of a protected class.  ASC and US Bank/Trustee have refused to accede to Plaintiffs' demand (not founded in law) to rescind or reform Plaintiffs' first mortgage.  As set forth in Exhibit 8 to Plaintiffs' Complaint, Plaintiffs, through numerous administrative proceedings, have attempted to coerce ASC and US Bank/Trustee to reform their mortgage to a 5% fixed rate thirty-year mortgage.  (Hecht Decl. Ex. H at 5.)  These Defendants refused to offer such a below-market loan, and now that foreclosure is imminent, Plaintiffs have brought this claim simply to harass them.  Further, Plaintiffs' generalized allegations of disparate treatment of African-Americans in general by the mortgage industry as a whole (*see, e.g.*, Hecht Decl. ¶ 5) do not save their specific claims against the Moving Defendants for civil rights violations.  Without allegations -- which Plaintiffs cannot make -- that the Moving Defendants acted in a systematically discriminatory manner toward African Americans, Plaintiffs' civil rights claims must be dismissed.

## POINT II

### PLAINTIFFS' CLAIMS UNDER TILA, HOEPA, RESPA, FAIR HOUSING ACT AND ECOA ARE TIME BARRED

Plaintiffs closed on their real estate purchase and their loans were funded on

October 12, 2005.  Plaintiffs filed their complaint in the instant action on January 31, 2008.  Because TILA, HOEPA, and RESPA all contain one-year statute of limitations that begin to run from the closing, Plaintiffs' claims under these Acts are time barred.  Similarly, Plaintiffs' Fair Housing Act and ECOA claims are time barred by those Acts' two-year statute of limitations.

The statute of limitations for TILA is set forth in 15 U.S.C. § 1640(e): "Any action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation."  Courts have universally held that the violation is counted from the date of the closing of the loan.  *See, e.g.*, *Scala*, 2007 U.S. Dist. LEXIS 73442, at *10 ("Case law supports the notion that the statute of limitations for TILA claims does not start running upon the discovery of the non-disclosure, but, rather, upon the funding of the loan."); *Smith v. RBC Mortgage,* No. 04-cv-9282, 2006 U.S. Dist. LEXIS 10282, at *10 (S.D.N.Y. Mar. 6, 2006) (same).  HOEPA is an amendment to TILA and thus governed by the same statute of limitations.  *See Scala*, 2007 U.S. Dist. LEXIS 73442, at *12 ("HOEPA, 15 U.S.C. §§ 1602(aa), 1639, is part of TILA, and as such, is barred by the same statute of limitations discussed above with respect to Plaintiffs' TILA claim."); *Mercado v. Playa Realty Corp.*, No. 03-cv-3427, 2005 U.S. Dist. LEXIS 14895, at *34 (E.D.N.Y. Jul. 7, 2005) (same).  Plaintiffs' loan closed on October 12, 2005, but the Complaint in the instant action was not filed until January 31, 2008.

While the statute of limitations may be tolled by an instance of "fraudulent concealment," the fraudulent concealment doctrine does not apply where, as here, the only fraud alleged is the non-disclosure itself.[12]  *See Cardiello v. Money Store, Inc.*, No. 00-cv-7332, 2001 U.S. Dist. LEXIS 7107, *16-17 (S.D.N.Y. Jun. 1, 2001).  Here, Plaintiffs cannot even argue fraudulent concealment to defeat defendants' statute of limitations defense because they began complaining of the alleged violations the day after the closing.  (Hecht Decl. Ex. A ¶¶ 79-81.)

---

[12]    Also, as there is no "continuing violations" doctrine under TILA, the statute of limitations is not extended by any alleged fraud that may occur subsequent to the initial loan date.  *See Cardiello*, 2001 U.S. Dist. LEXIS 7107, at *19.

Therefore, Plaintiffs' TILA and HOEPA claims must be dismissed.

Plaintiffs also bring a claim under Section 2607 of the Real Estate Settlement Procedures Act ("RESPA"). Section 2607 prohibits payment of kickbacks and unearned fees and includes a one-year statute of limitations triggered by the closing date. *See Barkley,* 2007 U.S. Dist. LEXIS 61940, at \*14 n.8; *Smith*, 2006 U.S. Dist. LEXIS 10282, at \*11. Therefore, Plaintiffs' RESPA claim must be dismissed with prejudice.

Plaintiffs' claim for relief pursuant to the Fair Housing Act, 42 U.S.C. § 3605 is similarly untimely. Fair Housing Act claims are subject to a two-year statute of limitations, as set forth in 42 U.S.C. § 3613(a)(1)(A), which again must be counted from the date of the closing. Here, the Fair Housing Act allegations in the Complaint are solely predicated on the acts of WCS, Fremont, and Tanenbaum in making and funding the loan, which closed on October 12, 2005. Thus, the limitations period for this claim expired in October 2007 and therefore must be dismissed with prejudice. Similarly, the Equal Credit Opportunity Act ("ECOA") contains a two-year statute of limitations, again measured from the date of the closing. 15 U.S.C. § 1691e(f) ("No such action shall be brought later than two years from the date of the occurrence of the violation . . . ."). Plaintiffs' ECOA claim is predicated entirely on acts performed by WCS, Fremont, and Tanenbaum on or before the date of the closing. Plaintiffs' ECOA claim is therefore time barred and must be dismissed with prejudice.

**POINT III**

**US BANCORP AND ASC SHOULD BE DISMISSED BECAUSE THEY HAVE NO CONNECTION TO THE CLAIMS IN THIS LITIGATION**

Plaintiffs have failed to make a single allegation against defendant US Bancorp beyond their allegations merely naming it as a party. (Hecht Decl. Ex. A ¶¶ 32-33, 37.) Where a party has no connection to the litigation at bar, no case or controversy exists for the court to adjudicate, and therefore the claim must be dismissed for lack of subject matter jurisdiction. *See, e.g.*, *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. BP Amoco, P.L.C.*, 319 F. Supp. 2d 352, 371-

73 (S.D.N.Y. 2004).   Here, US Bancorp has no connection to the facts giving rise to this litigation, as it is not, and never has been, a holder, assignee, originator, trustee, or servicer of Plaintiffs' mortgage.   Therefore, US Bancorp should be dismissed as a wrongly named defendant.

Similarly, Plaintiffs have not made any claims for improper servicing of the mortgage loans, and therefore ASC, which acts only as servicer for Plaintiffs' first mortgage loan, must be dismissed.   Plaintiffs' sole general allegation attempting to tie ASC to this litigation is contained in Paragraph 107 of the Complaint, which conflates the role of the servicer and the assignee.   But Plaintiffs apparently misapprehend ASC's role with respect to Plaintiffs' first mortgage, which Exhibit 9 to the Complaint makes very clear.   Exhibit 9 contains three letters to Plaintiffs, all of which confirm that ASC's sole connection to the transaction was that it took over the role of *servicing* Plaintiffs' *first* mortgage, effective February 1, 2006.   (Hecht Decl. Ex. I.)   Thus, Exhibit 9 directly contradicts Plaintiffs' allegation that the first mortgage itself was transferred, assigned and/or sold to America's Servicing Company.   The Court therefore may not credit this allegation.   *See Artco*, 1989 U.S. Dist. LEXIS 13548, at *9-10. Because Plaintiffs have not asserted any claims with respect to the servicing of their first mortgage, ASC should be dismissed from this case.

## CONCLUSION

For the foregoing reasons, the Complaint against the Moving Defendants should be dismissed with prejudice on all counts.

Respectfully submitted,

**LOWENSTEIN SANDLER PC**
*Attorneys for Defendants America's
Servicing Company, U.S. Bancorp, and U.S.
Bank, N.A. as Trustee for Master Asset
Backed Securities Trust 2006-FRE-1*

By: /s/ Steven M. Hecht
          Steven M. Hecht, Esq.